Filed 10/3/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D'ANTHONY D. et al., Persons Coming Under the Juvenile Court Law. | B251066 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHRISTIAN D., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK70406) |

APPEAL from an order of the Superior Court of Los Angeles County, Patricia Spear, Judge.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

Christian D. (father) appeals from a dispositional order denying his request for custody of his seven-year-old son D'Anthony and five-year-old daughter Dalia, who were removed from their mother's custody under Welfare and Institutions Code[1] section 361. Father contends the juvenile court erred by failing to consider his custody request under section 361.2, which requires the court to place a dependent child with the noncustodial parent unless the court finds the placement would be detrimental to the child's safety, protection, or physical or emotional well-being. The Los Angeles County Department of Children and Family Services (the Department) contends section 361.2 applies to a "nonoffending" parent only, and father was precluded from requesting custody under the statute because the juvenile court sustained jurisdictional allegations against him concerning physical abuse of D'Anthony and failure to protect his children.

We conclude the juvenile court erred when it failed to consider father's request under section 361.2, but the error was harmless in this case. In so concluding, we reject the Department's contention that a parent is precluded from requesting custody under section 361.2 based on jurisdictional findings made under a preponderance of the evidence standard. As we shall explain, reading this purported "nonoffending" parent requirement into the statute would effectively undermine the constitutional due process mandate that a detriment finding be made by *clear and convincing evidence* before a noncustodial parent is denied custody under section 361.2. Nevertheless, because the record establishes the juvenile court made a finding under section 361, by clear and convincing evidence, that placing the children with father would pose a substantial danger to their physical health and well-being, we conclude the court's error was harmless in this case. On this basis, we affirm.

---

[1]     Statutory references are to the Welfare and Institutions Code.

## FACTS AND PROCEDURAL BACKGROUND

On February 15, 2013, the Department received a Child Protection Hotline referral alleging general neglect and drug use by mother. At the time, mother and the two children lived in a two bedroom apartment with the paternal grandparents, mother's friend, and the friend's three children. A year earlier, father moved to Colima, Mexico, after prepaying the family's rent for a year. When the year expired, mother reportedly refused to help pay rent, and regularly sold her food stamps, leaving the children without food in the home. The reporting party also alleged that mother used methamphetamine and marijuana, drank alcohol, played loud music late into the night, and frequently left the children unattended to roam outside the apartment.

A Department social worker investigated the report and found the apartment messy, with clothing and toys scattered throughout the living room. There also were approximately six trash bags filled with alcohol bottles and other recyclables in the apartment. The kitchen appeared to have adequate food. Mother claimed she drank alcohol only occasionally and denied smoking methamphetamine or marijuana. D'Anthony, however, reported seeing mother smoke " 'weed or cigarettes.' " Mother submitted to a drug test, which came back positive for methamphetamine. On February 28, 2013, the Department removed the children from mother's home.

On March 1, 2013, father telephoned the Department social worker concerning the children's detention. Father reported living in a three-bedroom house in Mexico with his wife and their newborn son. Since moving to Mexico, he said he called to check on the children three to four times per week, and the children had visited him in Mexico on two or three occasions. Father said he thought the children were doing well with mother, until he learned from the paternal grandfather that mother was not paying rent and had moved a friend into their apartment. Father told the social worker he was making arrangements to have the children move in with him.

On March 5, 2013, the Department filed a section 300 petition on behalf of the children, alleging physical abuse and illicit drug use by mother.  The juvenile court found a prima facie case for detention, and ordered the children detained in shelter care, with supervised visits for mother.

On March 19, 2013, father appeared at an arraignment hearing and submitted to the juvenile court's jurisdiction.  Father's counsel requested that the children be released to father's custody, arguing there was no evidence of risk to the children.  The juvenile court denied the request, citing evidence that the children had frequent contact with father, yet he had failed to protect them from mother's abuse and neglect.  The court added that it had no information about whether the children would be safe in Mexico, and ordered the Department to conduct a Pre-Release Investigation (PRI) on father.

On March 28, 2013, a dependency investigator interviewed the children in advance of the jurisdiction and disposition hearing.  In the course of the interview, D'Anthony reported that father had hit him with " 'his snake belt.' "  When asked where he had been struck, D'Anthony looked down and rubbed his stomach area.  Dalia similarly reported that she had seen " 'dad hitting [D'Anthony] a lot, a lot, a lot of times.' "  When asked if she had seen any marks on D'Anthony's body, Dalia reported " 'I saw purple then all the colors of the rainbow.' "  Dalia denied ever being struck by father.

When confronted with the children's reports, father denied physically disciplining them.  He stated, " 'I never hit them.  I consider myself strict with them but I don't hit them.' "

On April 9, 2013, the Department filed a first amended section 300 petition, adding allegations concerning father's reported physical abuse of D'Anthony and his failure to protect the children.

Prior to the disposition hearing, the Department received a report from the Mexican social services agency, Desarrollo Integral de la Familia (DIF).  The report indicated that father had sufficient economic solvency to cover the children's basic needs and recreational activities, and his home was in good hygienic condition with ample

4

space and adequate furnishings for the family to live comfortably. The Department nevertheless expressed concern that the DIF report did not include a criminal background check or detailed assessment of father's background, which the Department asserted was necessary to ensure the children's safety before releasing them to father's custody.

On August 14, 2013, the juvenile court conducted a contested jurisdiction and disposition hearing on the amended petition. Father's counsel called D'Anthony as a witness, and the child testified in chambers. D'Anthony testified that during one of his month-long visits to Mexico, father had hit him on the cheek, though he was unclear about when the incident occurred. When asked why father hit him, D'Anthony responded "I don't know, I didn't do nothing. He just hit me." The child denied that any marks had been left by the incident, though he said it hurt a "[l]ittle bit" when father struck him. D'Anthony also testified that father hit him with a belt in Mexico when he urinated on the floor. He denied that it hurt, stating father hit him "really soft." Though he said this was the only time father struck him with a belt in Mexico, D'Anthony testified that father hit him five other times before. D'Anthony also claimed to have seen father smoke "kush" marijuana in Mexico.

After hearing argument from counsel, the juvenile court sustained the amended petition's jurisdictional allegations, including those concerning father's physical abuse of D'Anthony and failure to protect the children.

The juvenile court then heard argument on the contested disposition, at which father requested that the children be placed in his custody. The court denied the request, finding "by clear and convincing evidence there exist[s] a substantial danger to the children's health." The court explained, "I've now heard a trial. I heard a little boy say 'oh yeah he hit me, he hit me in the face, he hit me there.' " The court continued, "I realize that there are different standards in different countries about what's appropriate child discipline . . . . But I'm here, he's [father] here, [and] he's been here before. And I am not comfortable releasing [the children] to him period."

The juvenile court filed a minute order reflecting its substantial danger findings pursuant to section 361. The court made no finding with respect to section 361.2.

5

## DISCUSSION

1. *There Is No Requirement that a Noncustodial Parent Must Be "Nonoffending" to Be Considered for Placement Under Section 361.2*

We begin with father's contention that the juvenile court erred by failing to consider his request for custody under section 361.2.[2] The Department argues section 361.2 does not apply, because the juvenile court sustained jurisdictional allegations against father concerning his physical abuse of D'Anthony and failure to protect the children. In view of the sustained allegations, the Department maintains father is not a "nonoffending" parent as that term has been used in some cases addressing section 361.2's requirements.

Because the parties' contentions involve the interpretation and application of a statute, our review is de novo. (*In re Christian P.* (2012) 208 Cal.App.4th 437, 446.) In construing section 361.2, our role is to ascertain the Legislature's intent so that we may effectuate the purpose of the law. (*In re J. W.* (2002) 29 Cal.4th 200, 209.) In doing so, we consider the words of the statute first, because they are normally the most reliable indicator of legislative intent. (*In re John M.* (2013) 217 Cal.App.4th 410, 421 (*John M.*)) Where, as here, the statutory language is unambiguous, the plain meaning controls. (*Ibid.*; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504 (*Nickolas T.*).)

---

[2] We reject the Department's contention that father forfeited this issue by failing to request a detriment finding below. As we noted in *In re Abram L.* (2013) 219 Cal.App.4th 452 (*Abram L.*), application of the forfeiture rule "is not automatic. [Citation.] When an appellant raises a question of law, for example, the appellate court can exercise its discretion to address the issue." (*Id.* at p. 462.) Here, father requested that the children be placed in his custody, which triggered section 361.2, subdivision (a)'s mandate that "the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Italics added.) In any event, the question whether the sustained jurisdictional allegations against father alone precluded him from being considered for placement under the purported "nonoffending" parent requirement is a pure issue of law that we may address for the first time on appeal. (*Abram L.,* at p. 462.)

6

Section 361.2, subdivision (a) provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." Section 361.2, subdivision (c) requires the court to "make a finding either in writing or on the record of the basis for its determination under subdivision[ ] (a) . . . ."

The word "nonoffending" is not found in the text of section 361.2. (*Nickolas T., supra,* 217 Cal.App.4th at p. 1504; *John M., supra,* 217 Cal.App.4th at p. 421.) Nonetheless, "[i]n a few decisions, reviewing courts have used the phrase 'nonoffending noncustodial parent' as shorthand for 'a parent . . . with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300.' " (*In re V.F.* (2007) 157 Cal.App.4th 962, 969, fn. 4 (*V.F.*) [rejecting use of phrase because "nonoffending" does not appear in the text of section 361.2]; see, e.g., *In re Joshua G.* (2005) 129 Cal.App.4th 189, 202; *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129.) These earlier decisions generally "assumed, without deciding, that section 361.2 applied solely to nonoffending parents, and ha[d] not analyzed whether the statute could apply to a noncustodial parent who was also the subject of the current dependency proceeding . . . ." (*John M., supra,* 217 Cal.App.4th at p. 421.) The courts in these cases nevertheless "characterized section 361.2, subdivision (a) as permitting placement with a 'nonoffending noncustodial parent,' as though 'nonoffending' [was] a separate statutory requirement." (*Ibid.*)

By contrast, the court in *In re A.A.* (2012) 203 Cal.App.4th 597 (*A.A.*) recently articulated a basis for reading a "nonoffending" parent requirement into section 361.2, notwithstanding the word's absence from the text of the statute. In *A.A.*, the juvenile court removed the child from his mother, who had been arrested and incarcerated for five years on federal drug charges, and placed the child with his father. Shortly thereafter, the

7

child was removed from the father's custody, based on new allegations of physical abuse by the father, while the mother was still serving her federal sentence. (*A.A.*, at p. 602.) On appeal from a subsequent order terminating her parental rights, the mother asserted the juvenile court erred when it failed to consider placing the child in her care under section 361.2 after ordering the child removed from the father's custody. The mother argued she was a noncustodial parent and could have arranged for the child's care with family members during her incarceration. (*A.A.*, at p. 604.)

The *A.A.* court rejected the mother's contention, holding she was not entitled to consideration under section 361.2, because the statute authorizes placement with a "nonoffending" parent only. (*A.A., supra,* 203 Cal.App.4th at p. 608.) The court did not draw this requirement from the text of section 361.2, but rather from the reference to a "nonoffending parent" in section 361, subdivision (c). The *A.A.* court explained its reasoning as follows: "Section 361.2 comes into play *after* a child has been removed from the physical custody of his or her parents under section 361, subdivision (c). Subparagraph (1) of section 361, subdivision (c), requires the court to consider allowing a nonoffending parent to 'retain physical custody' so long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm. We interpret the phrase 'retain physical custody' to mean that the parent seeking temporary placement of the child under section 361.2 must not have suffered a previous loss of custody of the child by a juvenile court order of removal after a finding of detriment." (*A.A.*, at p. 608.) Thus, "[r]eading section 361.2 in light of section 361, subdivision (c)," the *A.A.* court held, "the parent must be *both* a nonoffending *and* noncustodial parent in order to be entitled for consideration under section 361.2, that is, the parent must retain the right to physical custody, and must not have been the subject of a previous detriment finding and removal." (*A.A.*, at p. 608; accord *John M., supra,* 217 Cal.App.4th at p. 424 [concluding "nonoffending" is a requirement under section 361.2 where the noncustodial parent's offense "was the cause of his noncustodial status"].)

8

More recently, the court in *Nickolas T.* held there is no implicit nonoffending parent requirement in section 361.2, thereby rejecting the *A.A.* court's "analysis that in view of section 361, subdivision (c) a parent must be both 'noncustodial' and 'nonoffending' to be considered for placement under section 361.2." (*Nickolas T., supra,* 217 Cal.App.4th at p. 1504.) Addressing the *A.A.* court's rationale head-on, the court in *Nickolas T.* explained that "section 361, subdivision (c)(1) states the court may remove the 'offending parent' from the home and allow the "nonoffending parent" to *retain physical custody* on a showing that he or she can protect the child from future harm. Thus, the term 'nonoffending parent' in section 361 refers to a custodial parent who is not the perpetrator of any child abuse or neglect. It does not refer to a noncustodial parent under section 361.2, subdivision (a)." (*Nickolas T.,* at p. 1505.)

In addition to the fact that "[t]he term 'nonoffending' does not appear in the text of section 361.2" (*Nickolas T., supra,* 217 Cal.App.4th at p. 1504), the *Nickolas T.* court found further support for its interpretation in the broader statutory framework. As the court explained, "[u]nder section 361, subdivision (c)(1), a finding of detriment is required to remove a child from the custody of an offending custodial parent. At each status review hearing, a parent who is the subject of a detriment finding is presumptively entitled to custody unless the [Department] proves detriment. (§§ 366.21, subds. (e) & (f), 366.22, subd. (a).) A prior detriment finding is not given preclusive effect at subsequent review hearings. (§ 366.22, subd. (a).) . . . Even if the noncustodial parent was the subject of a prior detriment finding and did not regain custody of the child, that parent is presumptively entitled to custody at each and every subsequent status review hearing. Thus, the presumption for placement with a noncustodial parent at a disposition hearing is consistent with the statutory scheme as a whole, and furthers the legislative goals to maintain or place a child in the care of a parent when safe for the child, strengthen the child's relationship with siblings and other relatives, and avoid the child's placement in foster care. (§§ 300.2, 361, 361.2, 361.3, 361.5, 366.21, 366.22.)" (*Nickolas T.,* at pp. 1505-1506, italics omitted.)

We agree with the *Nickolas T.* court's analysis and likewise reject the contention that an implicit "nonoffending" requirement can be invoked to preemptively deny a noncustodial parent consideration for custody without assessing whether the placement would pose a detriment to the child under section 361.2, subdivision (a). Moreover, apart from the reasons articulated in *Nickolas T.*, we hold this conclusion is compelled in the instant case by constitutional due process, which requires a detriment finding by *clear and convincing evidence* before a noncustodial parent can be denied placement under the statute. (See *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829 (*Marquis D.*).)

Here, the Department maintains no detriment finding was required, because the sustained jurisdictional allegations disqualified father from obtaining custody under section 361.2's purported "nonoffending" parent requirement. But were this the law, the heightened clear and convincing evidence standard would disappear, having been supplanted by the lower preponderance standard used to make the earlier jurisdictional findings. This has serious constitutional ramifications, because "the trial court's decision at the dispositional stage is critical to all further proceedings." (*In re Marquis D., supra,* 38 Cal.App.4th at p. 1829.) As explained in *Marquis D.*, "[s]hould the court fail to place the child with the noncustodial parent, the stage is set for the court to ultimately terminate parental rights. At all later review hearings, the court may deny return of the child to the parent's physical custody based on a finding supported only by a preponderance of the evidence that return would create a substantial risk of detriment to the child's physical or emotional well-being." (*Ibid.*, citing §§ 366.21, subds. (e) & (f), 366.22, subd. (a).) Thus, "[i]f a preponderance of the evidence standard of proof is applied to deny initial placement with the noncustodial parent, that parent may have his or her parental rights terminated without the question of possible detriment engendered by that parent ever being subjected to a heightened level of scrutiny." (*Ibid.*; see also *In re Henry V.* (2004) 119 Cal.App.4th 522, 530 ["A dispositional order removing a child from a parent's custody is 'a critical firebreak in California's juvenile dependency system' [citation], after which a series of findings by a preponderance of the evidence may result in

10

termination of parental rights.  Due process requires the findings underlying the initial removal order to be based on clear and convincing evidence."].)

Because a jurisdictional finding need only be made under the preponderance of evidence standard, reading a nonoffending requirement into section 361.2 will effectively undermine the mandate that there be clear and convincing evidence of detriment before placement with a noncustodial parent can be denied.  Such a result, and its consequences for all proceedings following the dispositional stage, does not comport with constitutional due process.[3]  (See *Marquis D., supra,* 38 Cal.App.4th at p. 1829 [explaining, "[t]he fact that the child could not initially be removed from custody absent a finding supported by clear and convincing evidence is a linchpin of the [Supreme Court's] determination [in *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 253] that the statutory scheme for terminating parental rights comported with due process requirements"].)

---

[3]     We acknowledge our colleagues in Division 1 rejected an identical due process challenge in holding a nonoffending parent requirement is implicit in section 361.2.  (See *John M., supra,* 217 Cal.App.4th at p. 424.)  In doing so, the *John M.* court relied on the following passage from *Marquis D.*:  " 'applying a clear and convincing standard of proof to remove custody from the custodial parent while denying placement with the noncustodial parent based on a preponderance of the evidence would lead to the anomalous result that a parent who had *no connection with the circumstances that brought the child within the jurisdiction of the court* could have his or her rights terminated upon a lesser showing than the parent who created those circumstances.' " (*John M.,* at pp. 424-425, quoting *Marquis D., supra,* 38 Cal.App.4th at p. 1829, italics added by *John M.*)  Based on this passage, the *John M.* court reasoned that "*Marquis D.* likewise implicitly recognizes the nonoffending requirement in section 361.2." (*John M.,* at p. 425.)  We respectfully disagree.  Though *Marquis D.*'s reference to "a parent who had no connection with the circumstances that brought the child within the jurisdiction of the court" serves to highlight the "anomalous result" that a noncustodial parent could be denied custody based on a lower standard of proof than is constitutionally mandated to remove a child from a custodial parent, the critical point of the passage is not the parents' different levels of culpability.  Rather, the passage underscores that due process requires the heightened clear and convincing evidence standard to be applied to *both* custodial *and* noncustodial parents before the state may intervene to deny a parent's right to physical custody of his or her child.  As we have explained, imposing a preemptive nonoffending parent requirement, which could result in the termination of parental rights without any finding of detriment by clear and convincing evidence, is inconsistent with *Marquis D.* and constitutional due process.

Of course, this is not to say that the juvenile court should ignore evidence supporting sustained jurisdictional allegations in determining whether placement with a noncustodial parent is suitable under section 361.2, subdivision (a). As *Nickolas T.* explains, the statute requires the court to focus on "the effect placement with the noncustodial parent would have on the child's safety, protection and physical and emotional well-being. If a noncustodial parent is in some way responsible for the events or conditions that currently bring the child within section 300—in other words, if the parent is an 'offending' parent—those facts may constitute clear evidence  of detriment under section 361.2, subdivision (a)." (*Nickolas T., supra,* 217 Cal.App.4th at p. 1505.) Be that as it may, the juvenile court cannot preemptively deny placement with a noncustodial parent, based solely on sustained jurisdictional allegations, without finding, by clear and convincing evidence, the placement would be detrimental to the child. (§ 361.2, subds. (a) & (c).)

2.      *The Error Was Harmless Because the Juvenile Court Found by Clear and Convincing Evidence That Placement with Father Would Pose a Substantial Danger to the Children's Health*

Though we have concluded the juvenile court erred in failing to make a finding under section 361.2, subdivisions (a) and (c), "[w]e cannot reverse the court's judgment unless its error was prejudicial, i.e., ' "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*Abram L., supra,* 219 Cal.App.4th at p. 463.) In view of the juvenile court's "substantial danger" finding under section 361, subdivision (c)(1), and the evidence supporting that finding with respect to father, we conclude the court's error did not result in a miscarriage of justice. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

12

Section 361, subdivision (c) provides in relevant part: "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of . . . [¶] (1) . . . a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home . . . ." Similarly, section 361.2, subdivision (a) requires the juvenile court to place a child with a noncustodial parent, "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." By its terms, section 361 applies to a custodial parent, while placement with a noncustodial parent is to be assessed under section 361.2. (See *V.F., supra,* 157 Cal.App.4th at pp. 969-970.) Accordingly, the juvenile court's findings under section 361 with respect to father—a noncustodial parent—did not comport with statutory requirements. Nevertheless, in assessing whether this error was prejudicial, we can neither ignore the similarity between these statutes' mandatory findings, nor disregard the evidence supporting the court's "substantial danger" finding concerning placement with father. (See, e.g., *Nickolas T., supra,* 217 Cal.App.4th at pp. 1507-1508 [applying the best interests standard and placing child in long-term foster care without considering detriment under section 361.2 was harmless error where the record contained substantial evidence to support a detriment finding]; cf. *Abram L., supra,* 219 Cal.App.4th at pp. 460-464 [finding miscarriage of justice where court made section 361 finding as to custodial mother, but not noncustodial father, and "nothing in the record" indicated the court considered the requirements of section 361.2].)

In addressing father's request for custody, the juvenile court specifically referenced father's physical abuse of D'Anthony, and was unequivocal about its dispositional findings under section 361: "I've now heard a trial. I heard a little boy say 'Oh yeah he hit me, he hit me in the face, he hit me there.' " The court continued, "I realize that there are different standards in different countries about what's appropriate child discipline . . . . But I'm here, he's [father] here, [and] he's been here before. And I am not comfortable releasing [the children] to him period." On this basis, the court found

13

"by clear and convincing evidence" that the requested placement with father posed "a substantial danger to the children's health." In view of this evidence, and the court's express finding under section 361, we cannot say it is "reasonably probable" that the court would have made a different finding had it considered whether the placement would be detrimental to the children's safety or physical well-being under section 361.2. (Cf. *Abram L., supra,* 219 Cal.App.4th at p. 464 [finding miscarriage of justice "[i]n light of the evidence in this case, *or lack thereof*"], italics added.)

## DISPOSITION

The juvenile court's order is affirmed.


**CERTIFIED FOR PUBLICATION**



                              KITCHING, J.

We concur:



        KLEIN, P. J.



        ALDRICH, J.