Filed 1/28/15  In re B.B. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re B.B. et al., Persons Coming Under the Juvenile Court Law. | B255724 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>B.B.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK02055) |

APPEAL from orders of the Superior Court for the County of Los Angeles.  Philip Soto, Judge.  Affirmed.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

## SUMMARY

The father in this dependency case is a noncustodial parent who was incarcerated when his two children were detained from their mother. The Los Angeles County Department of Children and Family Services (the Department) filed a subsequent dependency petition under Welfare and Institutions Code section 342,[1] alleging father had a history of criminal convictions, including robbery and other crimes, that rendered him incapable of providing regular care for the children and placed them at risk of physical harm. The juvenile court sustained the petition; removed the children from both parents (as to father, finding that "continuance in the home of the father for these children would create a substantial risk of detriment to their safety"); and denied father reunification services.

Father asserts three claims of error. He contends his criminal history was not substantial evidence that he put his children at substantial risk of suffering serious physical harm as required by section 300, subdivision (b). He argues the court erroneously removed the children under section 361, subdivision (c) – because he was not a custodial parent – and should have acted under section 361.2, which governs placement of a child with a noncustodial parent. And he contends the juvenile court did not comply with the notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).

We remand for the limited purpose of directing compliance with ICWA, but otherwise affirm the jurisdictional and dispositional orders.

## FACTS

The Department placed B.B., then five years old, and L.R., then a few weeks old, in protective custody on October 25, 2013, after a domestic violence incident between mother, who was highly intoxicated, and her male companion D.R., who was not willing to take care of the children. Among other things, the Department's dependency petition

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

alleged mother's abuse of alcohol, and her violent dispute with D.R. in the presence of the children, endangered the children's physical health and safety and placed them at risk of harm. On October 30, 2013, the court found "continuance in the home of Parents is contrary to the child's welfare."

On November 1, 2013, mother appeared for arraignment on the petition. The court found father was B.B.'s presumed father; ICWA did not apply; and both father and D.R. were alleged fathers of L.R. Mother stated that father was still in prison.

On November 14, 2013, the Department located father at Wasco State Prison. Its jurisdiction/disposition report on the allegations against mother (signed November 21, 2013) indicated that father was then serving a 16-month prison term that started in August 2013, for being a felon or addict in possession of a firearm. (Pen. Code, § 29800, subd. (a)(1).) The Department recommended that father receive family reunification services and participate in a program of parenting and individual counseling.

Father wrote a letter to the court dated November 27, 2013, asking the court "to work with me on keeping custody of my son and allowing my family members to get temporary custody of [B.B.] up until my discharge date 3-31-2014 which is not far from now." Father listed six "family members that care about my son." He said he was not sure if L.R. was his child or not.

On December 11, 2013, father appeared in custody at the jurisdictional hearing on the allegations against mother. Mother pled no contest to the allegations described above. The court ordered DNA testing for father and L.R. (The court later found father was the biological father of L.R.)

Father's counsel observed that father was nonoffending as to jurisdiction, and advised the court father would be asking for a "home of parent father order." Counsel stated father had "numerous relatives" who were present in court as well as a paternal grandmother available for placement. The court ordered the social worker to interview father to "see whether or not he has any kind of viable plan," and ordered the relatives interested in placement to "go to the live scan office today to be live scanned so we can start a background check." The court said: "You have to understand if his plan does not

3

check out, the county has made it clear or has indicated strongly that they will be filing a complaint against [father]."

Mother's counsel stated she had "agreed to do the items on the disposition plan," but the court said it would "hold off on that until I find out whether or not either one of these children are going to be released to the father on an HOP [(home of parent)] father order with an understanding that he has a plan for where they can be placed." The court asked that father "also be referred to services while incarcerated so he could start his plans now," and then ordered father to get referrals for "anger management classes, parenting classes, drug/alcohol classes."

The court set the disposition hearing on mother's case for January 27, 2014, ultimately continuing the hearing to April 10, 2014.

Meanwhile, on February 3, 2014, the Department filed a subsequent juvenile dependency petition under section 342,[2] alleging father's history of criminal convictions rendered him incapable of providing regular care for the children and placed the children at risk of physical harm under section 300, subdivision (b). The Department's report of the same date stated father had a 28-year criminal history including convictions for grand theft, second degree robbery, controlled substance offenses, pandering and others; that since he was incarcerated on August 12, 2013, he failed to provide for his children; and that he was convicted of DUI's that occurred in 2011 and again in 2013 (the former of which also resulted in battery and hit and run (property damage) convictions). The report also stated father "has failed to take parenting classes or drug counseling courses during his incarceration," and had not visited with the children due to his incarceration. (By January 2014, both children had been placed with a cousin, C.E.)

---

**2**     Section 342 provides: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. . . . [¶] All procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section."

4

An addendum to the Department's report recommended no reunification services for father under section 361.5, based on his conviction in 1997 of a violent felony.[3]

On April 10, 2014, the court held a hearing on jurisdiction as to father, and on disposition as to both parents. Father, who was no longer in custody, was present. The court received into evidence the Department's report with father's criminal records. Father presented no evidence, but argued that the Department presented no evidence of how father's criminal history posed a risk to his children. The juvenile court sustained the jurisdictional allegations, observing: "Unless somebody has something else that they want to say, I'm still of a mind to make a true finding with regards to [jurisdiction.] This is a little bit different situation since [father's] out now to talk about [disposition]. But I think for the jurisdictional portion, we certainly do have grounds for making a true finding from the . . . February 3rd, 2014 [petition] that [the allegation] is true."

Counsel for father declined the court's invitation to present argument "before I make a 361(c) finding," stating she "wanted to argue about the services." The court then found that "continuance in the home of the father for these children would create a substantial risk of detriment to their safety, protection, physical, emotional well-being and there's no reasonable means to keep the children safe without removal," and "[t]he children are removed from their parents and suitably placed."

The court then solicited argument from father's counsel "as to how we get past the [section 361.5, subdivision] (b)(12) exception" that reunification services need not be provided because of father's criminal background. Counsel responded by stating that father "would object to the removal and the suitable placement order that the court has made," and asked to enter father's stipulated testimony. The parties stipulated that, if father were to testify under oath, "he would say that he has a home ready for his children.

---

[3]    Section 361.5, subdivision (b) states: "Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, . . . [¶] . . . [¶] [t]hat the parent . . . has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." (§ 361.5, subd. (b)(12).)

5

He lives in a house with his 89-year-old mother, paternal grandmother. He's ready and able to have his children in his care today."

Father's counsel argued the court should "give the father reunification services to at least give him a chance to have his children back in his care." Counsel explained father was "getting on his feet now," was on probation for six months to a year, and that father had "done his time" for the "robbery conviction from over 20 years ago." She said father "does plan on entering into programs and doing parenting and counseling just in case the court does not grant him services today so that he could file a 388 [petition to modify an order based on new evidence or changed circumstances]."

The Department's counsel argued this was "not a case of a robbery 20 years ago," but rather a lifetime of crime, and that father had just been released from prison after his 2013 conviction for being a felon with a firearm. Father was "driving around with a loaded weapon," and "was caught as a felon with a weapon" when the weapon discharged, the round went into his leg, and a traffic collision resulted.

Responding to questions from the court, father's counsel said father was living with and taking care of his elderly, disabled mother, and was not working "at this time."

The court concluded it did not have grounds for ordering the Department to provide reunification services. The court observed that it "would be a totally different case" if father had lived a crime-free life since his robbery conviction, "[b]ut that's not the situation. And I can't blind myself to the number of convictions since the robbery conviction involving guns, involving drugs, involving pandering for prostitution purposes, involving all kinds of other crimes involving crimes of moral turpitude." "There's not clear and convincing evidence that you have changed. Now that may be the case in six months if you stay out of the trouble, and I'm hopeful that you do. And I would reconsider that on a 388 if you do. [¶] But I have to agree with the county social workers at this time that your lengthy and extensive criminal background are a danger to these young children and that you shouldn't have services at this time."

Father filed a timely notice of appeal.

6

**DISCUSSION**

**1. The Substantial Evidence Claim**

Father contends there was no showing his children were at risk of suffering serious physical harm as required under section 300, subdivision (b).

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) "The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record." (*In re James R.* (2009) 176 Cal.App.4th 129, 135.)

Jurisdiction is proper if there is a substantial risk the children will suffer "serious physical harm or illness" as a result of father's failure to adequately protect them. (§ 300, subd. (b).) This jurisdictional requirement " 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .' [Citation.]" (*In re James R., supra,* 176 Cal.App.4th at p. 135.)

The Supreme Court tells us that "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction." (*In re I.J., supra,* 56 Cal.4th at p. 773.) "The legislatively declared purpose . . . 'is . . . to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.,* at p. 773.)

Father argues that his criminal history did not place the children at substantial risk of serious physical harm. He says the record "does not indicate that father ever exposed the minors to his criminal activities"; most of his criminal convictions occurred between 1986 and 2001; the convictions for his conduct in 2011 for "driving under the influence

7

of drugs/alcohol," hit and run with property damage, and battery were misdemeanors"; father "served his sentence" for his August 2013 felony conviction for being a felon with a firearm; and "[s]peculation about a parent's future conduct cannot support a finding of dependency under section 300, subdivision (b)."

We do not see it that way. Father was convicted for driving under the influence and related misdemeanors committed in 2011, after a long history of other criminal acts. In 2012, father accidentally shot himself while driving with a loaded gun he was illegally carrying, causing a traffic collision. In 2013, he was again convicted for driving under the influence. No explanation is required to support our conclusion that drunk driving and driving with a loaded gun present a risk to the children, and father presented no evidence of any effort to rehabilitate himself.

Father cites *In re Sergio C.* (1999) 70 Cal.App.4th 957. In that case, the dependency court sustained allegations that the father " 'ha[d] a history of having conviction[s] of theft of personal property, trespassing with injury to property, false identification to peace officers, and driving reckless.' " (*Id.* at pp. 959-960.) But the Court of Appeal reversed because (as the Department conceded) there was insufficient proof of the father's alleged history of prior convictions. (*Id.* at p. 960.) The father admitted he had been arrested; all were misdemeanor offenses with the most recent arrest being more than two years earlier. Moreover, the child was well cared for and happy at home with his father, who was gainfully employed, and "it sounds as though [the child] has a chance to lead a normal and happy life with his father." (*Id.* at p. 959, fn. 3.) *Sergio C.* is a far cry from this case.

## 2. The Dispositional Order

Father does not challenge the court's denial of reunification services. He contends that, as a noncustodial parent, he "was entitled to a custody assessment under section 361.2," with "a determination whether placing the minors in his custody under section 361.2 would be detrimental," rather than the determination the juvenile court actually made, namely, that "continuance in the home of the father for these children would create a substantial risk of detriment to their safety, protection, physical, emotional well-being

8

and there's no reasonable means to keep the children safe without removal." We conclude any error was harmless in this case, because the record shows the juvenile court made a finding under section 361, by clear and convincing evidence, that placing the children with father would pose a substantial danger to their safety and well being. (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 295 (*D'Anthony D.*).)

The legal background is as follows.

Under section 361.2, "[w]hen a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2.)

Under section 361, a dependent child "shall not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence of any of the following circumstances . . . : [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (*Id.*, subd. (c)(1).)

In this case, the juvenile court proceeded under section 361, subdivision (c), which by its terms refers to taking children "from the physical custody" of their parents. Since father did not have physical custody of his children, by its terms, that provision does not apply. And, on its face, section 361.2 does apply, because the children were not residing with father and he asked for placement of the children with him.

We pause to note there is some conflict in the authorities on whether a court must consider placement of a child with a noncustodial parent under section 361.2 when that parent is an "offending" parent. Although the term "nonoffending" does not appear in the text of section 361.2, some courts have recognized "an implicit nonoffending

9

requirement in section 361.2." (*In re John M.* (2013) 217 Cal.App.4th 410, 420, 424 [concluding "nonoffending" is a requirement under section 361.2 and the incarcerated father was "neither nonoffending nor noncustodial"; because father's criminal offense "was the cause of his noncustodial status," he did not fit within the purpose of section 361.2]; *In re A.A.* (2012) 203 Cal.App.4th 597, 602, 606-608 [incarcerated mother from whom children had previously been removed, and whose custody right had not been restored, was not entitled to consideration under section 361.2].)

Other courts disagree, finding placement under section 361.2, subdivision (a) does not require that the noncustodial parent also be nonoffending. (See, e.g., *D'Anthony D., supra,* 230 Cal.App.4th at p. 301 [rejecting the contention "that an implicit 'nonoffending' requirement can be invoked to preemptively deny a noncustodial parent consideration for custody without assessing whether the placement would pose a detriment to the child under section 361.2, subdivision (a)"; constitutional due process "requires a detriment finding by *clear and convincing evidence* before a noncustodial parent can be denied placement under the statute"]; *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1504 [§ 361.2, subd. (a) does not exclude from consideration for placement a noncustodial parent with a history of prior involvement with child dependency proceedings]; *In re V.F.* (2007) 157 Cal.App.4th 962, 966 ["section 361.2 does not distinguish between an offending and nonoffending parent"; "[i]f a noncustodial, incarcerated parent seeks custody of the child, the court must determine whether placement with that parent would be detrimental"; "we decline to make implied findings [of detriment] where the trial court has not considered the appropriate statutory provision"].)

In this case, we need not decide whether section 361.2 applies to an offending parent. Even if the court erred in failing to make a finding under section 361.2, " '[w]e cannot reverse the court's judgment unless its error was prejudicial, i.e., " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' [Citation.]" (*D'Anthony D., supra,* 230 Cal.App.4th at p. 303.) As in *D'Anthony D.*, where the court found "the juvenile court's

findings under section 361 with respect to father – a noncustodial parent – did not comport with statutory requirements" (*ibid.*), the error was harmless: "Nevertheless, in assessing whether this error was prejudicial, we can neither ignore the similarity between these statutes' mandatory findings, nor disregard the evidence supporting the court's 'substantial danger' finding concerning placement with father." (*Ibid.*; see *id.* at p. 304.)

The same is true here. At the hearing, the juvenile court found "continuance in the home of the father for these children would create a substantial risk of detriment to their safety, protection, physical, emotional well-being and there's no reasonable means to keep the children safe without removal." In denying father reunification services, the court said that "I have to agree with the county social workers at this time that your lengthy and extensive criminal background are a danger to these young children . . . ." The court's minute order states: "By clear and convincing evidence pursuant to [section 361, subdivision (c)]: Substantial danger exists to the physical health of minor(s) and/or minor(s) is suffering severe emotional damage, and there is no reasonable means to protect without removal from parent's or guardian's physical custody." Father's criminal history, and particularly the facts leading to his most recent conviction in 2013 (accidentally shooting himself while driving a car and carrying a loaded gun, causing a collision) support the court's conclusion.

In short, as in *D'Anthony D.*, "we cannot say it is 'reasonably probable' that the court would have made a different finding had it considered whether the placement would be detrimental to the children's safety or physical well-being under section 361.2." (*D'Anthony D., supra,* 230 Cal.App.4th at p. 304.)

### 3.  The ICWA Claim

Father contends, and the Department concedes, the juvenile court did not comply with ICWA requirements.

The dependency petition filed October 30, 2013, included "Indian Child Inquiry Attachment" forms signed October 25, 2013, in which the social worker stated that the children had no known Indian ancestry. The detention report signed October 26, 2013, also stated, without elaboration, that ICWA did not apply. But in her "Parental

11

Notification of Indian Status" form filed November 1, 2013, mother reported that she "may have Indian ancestry," identifying Blackfoot and Cherokee tribes. At the hearing that day, the court asked if there were any reason to believe father had any American Indian heritage, and mother replied that "He's Creole and then I'm Creole." The court asked if father or mother were registered with any American Indian tribes, and mother said no. The court then asked if the children or "[a]ny close relatives to you – mother, father, anyone that you know – that's registered," and mother replied, "Not registered, but I know that's in my family." The court then stated, "Okay. This is not an ICWA case."

We agree with the parties that the juvenile court erred in determining further inquiry about the children's Indian status was not required. " 'The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement.' [Citation.]" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165; see Cal. Rules of Court, rule 5.481(a)(5)(A) ["The circumstances that may provide reason to know the child is an Indian child include the following: . . . [A] person having an interest in the child . . . informs or otherwise provides information suggesting that the child is an Indian child to the court . . . ."].)

The information provided by mother was sufficient to trigger the obligation of the Department to make a reasonable inquiry into her claim, and to serve appropriate ICWA notices. (See *In re Gabriel G., supra,* 206 Cal.App.4th at p. 1166 ["A child may qualify as an Indian child within the meaning of the ICWA even if neither of the child's parents is enrolled in the tribe."].)

We therefore remand for the limited purpose of directing the juvenile court to order the Department to make and document reasonable inquiry regarding the children's possible Indian heritage and, if appropriate, to serve all requisite ICWA notices.**4**

---

**4**     The limited remand we order to ensure ICWA compliance does not require reversal of the jurisdiction and disposition orders. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 187-188 [upon showing of failure to comply with ICWA**,** reversal of

12

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed. We remand for the limited purpose of directing the juvenile court to order the Department to comply with ICWA**.**

                                                              GRIMES, J.

We concur:

         RUBIN, Acting P. J.

         FLIER, J.

---

juvenile court's orders is only required where parental rights have been terminated; orders earlier in the proceedings may be set aside in the juvenile court in the event the minor, upon due compliance with ICWA**,** is shown to be an Indian child]; accord, *Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 267-268; see also *In re Damian C.* (2009) 178 Cal.App.4th 192, 199-200 ["Although we conclude the matter must be remanded with directions to the court to ensure ICWA compliance, we decline to reverse the jurisdictional and dispositional orders. There is not yet a sufficient showing [the minor] is an Indian child within the meaning of ICWA."].)