Filed 12/6/23  In re Samantha H. CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re SAMANTHA H., a Person Coming Under the Juvenile Court Law. | B324288 (Los Angeles County Super. Ct. No. 22CCJP03221) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SANDRA O. et al.,<br><br>        Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee. Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant Sandra O.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Danny H.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Sandra O. (mother) and Danny H. (father) separately appeal from a dispositional order entered under Welfare and Institutions Code section 300 on behalf of their daughter, 17-year-old Samantha H. (born August 2006).[1]  Mother, who resides in Argentina, contends that the juvenile court erred in denying mother's request for custody of Samantha.  Father joins in mother's arguments.  We find no error and affirm the order.

## COMBINED FACTUAL AND PROCEDURAL BACKGROUND

**Initial referral and investigation**

The Los Angeles County Department of Children and Family Services (DCFS) received a referral in July 2022 alleging father physically abused Samantha and that her older brother, Matthew H. (born November 2004), was at risk.  The reporting party claimed father looked through Samantha's phone and found pictures of her smoking with friends and performing sexual acts.  Father tried to get a confession from Samantha, as father believed she was not being honest, which led to an argument.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

2

Father hit Samantha with an open hand causing a visible injury. Samantha's brother was not present during the incident as he was reported to be staying with the paternal grandmother (PGM).

The DCFS social worker had telephonic contact with PGM on July 26, 2022. Samantha too was staying with PGM. PGM stated father was "very violent" and has physically hit Matthew in the past. PGM reported both children were scared of father. PGM had observed marks and bruises on Samantha in the past and was concerned Samantha would be physically abused if she returned to father's home. PGM stated father physically abuses the children to the point of bruising and then keeps them home until the bruising subsides. Samantha had disclosed to PGM that she found a bag of marijuana in father's home. The social worker suggested the children meet her at the DCFS office so the children could be interviewed. PGM agreed.

PGM reported that the children barely remembered their mother. The parents were divorced, and father had sole legal and physical custody of the children.

The social worker spoke with father by telephone on July 26, 2022. Father said he found videos of Samantha doing explicit acts and drugs. Father confiscated Samantha's phone and changed all the passwords to her social media and e-mail. Father reported the behavior to the other children's parents. Father said Samantha asked to go to PGM's home and he consented. Father wanted to be present during Samantha's interview so he could show her the videos he found. Father wanted to teach Samantha a lesson and preferred she go to foster care rather than PGM's home.

On July 27, 2022, the social worker met with Samantha in person at the DCFS office. Samantha informed the social worker that she did not want to see father because she was afraid of him. Samantha believed if she were to go home, father would hit her. Samantha had not disclosed past abuse because father told her not to say anything. Samantha felt safe with PGM and wanted to stay in PGM's home.

Samantha said father found pictures of her friends using inappropriate substances. Samantha denied using such substances. Her mother used in the past, and Samantha did not want to end up like her. Samantha disclosed that father uses marijuana, and she recently found a bag of marijuana in the home. Samantha denied sexual abuse and denied having explicit videos on her phone. She stated there was one picture of her with her head on her boyfriend's shoulder, and when father saw the picture he called her a whore, a slut, and a prostitute. Father slapped Samantha on the face approximately three times. She had a cut on her inner lip and a bruise under her left eye for about three days. Father put her in a choke hold and started pulling her hair while she yelled for him to stop. Samantha did not know who called the police, but they took an injury report and pictures of her bruise. Samantha confirmed that Matthew was not home during the incident as he was staying with PGM. Samantha said she never wants to return to father's home.

The social worker interviewed father in person with mother present on Facetime. The social worker informed father that interviews were normally done privately but father insisted mother be present via Facetime. Father stated when he confronted Samantha with the videos and photos, she started insulting him, hit him, and pushed him away. Father lifted his

shirt and pointed to two marks on his stomach. Father admitted to slapping the child with an open hand on the left side of her face. He did not know if she sustained bruising because her hair was covering her face. Father was of the opinion that Samantha was not safe with PGM because PGM would take Samantha to the homes of friends he does not know.

DCFS had received multiple prior referrals alleging physical abuse by father over several years. The children and PGM would recant or minimize the abuse once interviewed by DCFS. In 2012, mother and father engaged in mutual violence. In 2011, mother was hospitalized on a section 5150 hold when she believed there were people watching her in her home. Mother reported running out of the home after being scared the people in her home were coming after her. Mother was diagnosed with schizophrenia, depression, and psychosis. Both PGM and Samantha reported that mother did not follow through with her prescriptions.

**Petition and initial detention**

On August 15, 2022, DCFS obtained a removal order authorizing detention of Samantha from father's custody.[2] On August 17, 2022, DCFS filed a petition on behalf of Samantha pursuant to section 300, subdivisions (a) and (b). The petition alleged that father physically abused Samantha and created a dangerous home environment by keeping accessible marijuana in the home.

When DCFS filed the petition, mother's whereabouts were unknown. Mother was not named in the petition. Mother

---

[2]     A removal order was not requested for Matthew because he refused to be involved in the investigation and was going to Argentina to be with mother.

appeared telephonically from Argentina at the detention hearing with the assistance of an interpreter. At the detention hearing, mother did not request Samantha be released to her custody. Instead, she requested telephone visits and video visits.

**Subsequent reports**

In a last minute information for the court filed on August 18, 2022, DCFS reported that Samantha had provided a video in which Samantha was crying and telling father that she will never forget witnessing father beat Matthew and make his nose bleed, pull his hair, and punch him. Father stated, "You better not forget that because some day it can totally happen to you." Father threatened to take Samantha to Las Vegas and do the same thing to her because it was "totally legal" to beat her up there. Matthew reported he did not remember the details of the incident because it happened so fast. Father denied hitting or punching Matthew. Samantha said Matthew was unlikely to disclose abuse because Matthew does not really talk, and father was sending Matthew to Argentina. PGM told the social worker she overheard father talking to mother on speakerphone and mother said the best way for Samantha to learn her lesson would be to send her to Argentina.

When the social worker interviewed father, she found father continuously tried to intimidate her, stating he owned a photo journalist investigative company and knew people of influence. Father claimed he contacted the FBI and other agencies to investigate DCFS and its social workers. Father reiterated that he saw a video on Samantha's phone of her engaging in sexual activity and admitted his reaction was to slap her. He denied seeing a bruise, stating that Samantha went with him to T.V. sets and knew how to create fake bruises and marks.

An anonymous witness reported Samantha told the witness that father would hit Samantha. Two of Samantha's friends had received phone calls from father telling them to stay away from her. Samantha sent a picture of herself with a raised mark on her face and shared a video of father in which he told Samantha he was going to "kick her ass" like Matthew.

In a conversation with mother in September 2022, mother reported to a social worker that Samantha had visited her two years earlier and they are close despite the distance. Mother described Samantha as "very aggressive." Mother said she had a good relationship with father, and father keeps her informed of everything going on with the children. Father called her after the incident with Samantha and said he defended himself against Samantha. Mother denied ever hearing of father hitting Samantha prior to this incident. Father admitted to mother that he hit Matthew in Las Vegas. Mother said father is a good father; if he has been strict with Samantha, it is because of the things Samantha is doing. Mother acknowledged that father uses marijuana, but denied knowing the frequency.

As to her mental health, mother denied use of alcohol or drugs. She admitted there was a time when she was very depressed due to her divorce and losing her children. Mother reported she is currently stable and no longer suffers from depression. Mother has been taking anti-depressants for about 10 years. Mother acknowledged that in the United States she was diagnosed with schizophrenia, but in Argentina she was diagnosed with depression.

**Jurisdiction/disposition**

The combined jurisdiction and disposition hearing took place on September 29, 2022. Father testified. He referred to

7

mother as his "best friend." He claimed the accusations in the petition were all false. Father explained that his form of discipline involved withholding privileges and spanking on the butt. He testified that during the recent situation, Samantha assaulted him, and he reflexively slapped her on the neck. Father clarified that he did not hit her on the face. Father testified that mother supported his form of discipline "100 percent." Father admitted he wanted to send Samantha to Argentina so she could "learn[] [a] lesson."

Father's counsel argued that the juvenile court should dismiss the allegation of physical abuse because father only hit Samantha one time and denied physically abusing her previously. He argued heightened punishment was necessary due to Samantha's disrespect and the inappropriate content on her phone. Mother's counsel did not oppose father's position. Mother's counsel added that mother believed father had been a good parent to Samantha and did his best with the difficulties he faced with her. Regarding disposition, mother's counsel requested that Samantha be released to home of mother, as mother was nonoffending.

Counsel for Samantha argued that the court should sustain the physical abuse allegation due to the abundance of evidence before the court that father had been physically abusing Samantha and Matthew for years, father's attempts to intimidate the social worker, and his clear coaching of mother in the presence of social workers.

The court declared Samantha a dependent of the court under section 300. It found by clear and convincing evidence that there would be a "substantial danger" to Samantha's "physical health, safety, protection, or physical and emotional well-being" if

returned home, and there were no reasonable means to protect her without removal from the parent's custody. Reasonable efforts to prevent removal were made. The court ordered the care and custody of Samantha to be placed with DCFS.

Following the court's placement order, DCFS requested the court make a "detriment finding against allowing the child to be released to mother." The court responded, "I made a suitable placement order." The court explained, "The court declines to place the child with the mom. That is almost like placing the child back in the home of the father."

In its written order, the court wrote:

"The court finds by clear and convincing evidence, pursuant to Welfare and Institutions Code sections 361(a)(1), 361(c), 361(d) and 362(a), and additionally applying to noncustodial parent(s)/legal guardian(s) the constitutional and statutory safeguards available to custodial parents.

"It is reasonable and necessary to remove the child from the parents, as such removal is defined in 45 CFR 1356.21(k)(1)(ii), and the care, custody, and control of the parent(s)/legal guardian(s) from whom the child is are [*sic*] being removed because there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child, and there are no reasonable means by which the child's physical health can be protected, without removing the child from the home and the care, custody, and control of that or those parent(s)/legal guardian(s).

"The Court further finds that it would be detrimental to the safety, protection, or physical or emotional well-being, and special needs, if applicable, of the child to be returned to or placed in the

home or the care, custody, and control of that or those parent(s)/legal guardian(s)." (Boldface omitted.)

On September 30, 2022, the court called the parties to court because it reconsidered its no-visit order as to father, and instead allowed father to visit Samantha in a therapeutic setting.

## DISCUSSION

### I. Applicable law and standard of review

Mother argues the juvenile court erred as a matter of law in failing to apply section 361.2 in connection with mother's request that Samantha be placed in her custody. Mother seeks remand with directions to the juvenile court.

When a child is adjudged a dependent of the court on the ground that he or she is a child described by section 300, the juvenile court is authorized to limit the control over the child by any parent or guardian. (§ 361, subd. (a)(1).)

Section 361, subdivision (c) permits the juvenile court to remove physical custody of the child from the parent "with whom the child resides at the time the petition was initiated" where it finds by clear and convincing evidence that there is a substantial danger to the physical health, safety, protection, or emotional well-being of the child or would be if the child were returned home, and there are no reasonable means to protect the child without removal from the parent's physical custody.

Section 361, subdivision (d) requires that the dependent child "shall not" be taken from the physical custody of a parent with whom the child "did not reside" at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of substantial danger to the physical health, safety, protection, or emotional well-being of the child if the child were to

10

live with that parent, and there are no reasonable means to protect the child without removal from that parent's physical custody.

Section 361.2, subdivision (a) applies when "there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." If such a noncustodial parent requests custody, the juvenile court "shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (*Ibid*.)

Because mother contends that the juvenile court applied the wrong statute, we review her contention as a matter of law. "When the issue on appeal involves the interpretation and proper application of the dependency statutes, . . . our review is de novo." (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344.)

## II.   Forfeiture

We first address the issue of forfeiture. Mother contends on appeal that the juvenile court failed to apply section 361.2. However, mother provides no citation to the record showing that she requested the juvenile court to apply this statute.

Section 361.2 applies where there is a noncustodial parent who "desires to assume custody of the child." At no time prior to the jurisdiction/disposition hearing did mother make it known that she desired to assume custody of Samantha. Therefore, the statute was inapplicable throughout the preliminary investigation and decisionmaking regarding Samantha's placement.

11

During oral argument at the jurisdiction/disposition hearing, mother's attorney addressed "additional information today with mother's statement." Among other things, it was "further apparent that the mother is asking that the child live in Argentina with her. So at this point for the mother, I would ask that the child be released to home of mother." Mother's counsel made no mention of section 361.2 and did not ask the juvenile court to make an analysis under this statute. Nor did mother's counsel request a continuance for the parties to explore the possibility of placement with mother or the issue of detriment. Mother's counsel did not object to or seek clarification regarding the court's reasoning for declining to place Samantha with mother. By never having requested the juvenile court make a finding under section 361.2, mother has forfeited the issue. (See, e.g., *In re E.A.* (2012) 209 Cal.App.4th 787, 791 [finding failure to request a detriment finding forfeits the issue on appeal because the "alleged defect . . . could have been easily cured, if raised in a timely fashion"].)

Mother argues that because she raises an issue of law, the forfeiture rule is inapplicable. Mother cites *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 (*Ward*), which held that "a change in theory is permitted on appeal when 'a question of law only is presented on the facts appearing in the record. . . .'" *Ward* permits, but does not require, consideration of a new theory on appeal where the theory advanced on appeal "does not contemplate any factual situation different from that established by the evidence in the trial court." (*Ibid.*; see *In re V.F.* (2007) 157 Cal.App.4th 962, 968 ["A question of law is not automatically subject to the doctrine of forfeiture."], superseded by statute as stated in *In re Isabella G.* (2016) 246 Cal.App.4th 708, 724)

While these authorities allow this court to consider issues of law raised for the first time on appeal, we decline to do so here. Mother's last minute request for custody, without further factual or legal development and without a request for continuance to further address the issue, was insufficient to avoid forfeiture in this case.[3]

## III.   Harmless error

Because mother failed to timely alert the court that she desired custody and failed to direct the court's attention to section 361.2, she forfeited the issue of whether the court should have applied the statute.  However, we note that even if mother had raised the issue, the juvenile court made findings that placement with mother would be detrimental to Samantha.  Thus, any error is harmless.

The court made it clear that placing the child in the home of mother would be detrimental.  The court explained that there was "clear and convincing evidence there is substantial danger if

---

[3]     Mother points out that it was DCFS's burden to prove that placement with mother would be detrimental to Samantha. Mother cites *In re Brian P.* (2002) 99 Cal.App.4th 616, 623, as support for her position that even if the issue was not a question of law and was a substantial evidence argument, the issue would still not be forfeited because DCFS bore the burden of proving that placement with mother would be detrimental to Samantha. By failing to raise the issue until the disposition hearing, mother deprived DCFS of an opportunity to formally address the issue of detriment.  Nevertheless, as the record shows, the juvenile court found that there was sufficient evidence in the record to prove that it would be detrimental to Samantha to be placed with mother.  Since mother has not raised a sufficiency of the evidence challenge, we decline to address this point further.

she were to be returned home to her physical health, safety, protection, or physical and emotional well-being." In making this finding, the juvenile court did not differentiate between Samantha returning to father's home or to mother's home, commenting that placing the child with mother "is almost like placing the child back in the home of the father." In making this comparison, the juvenile court was justifiably relying on the testimony of father that he and mother were best friends, as well as mother's repeated admissions that she approved of father's form of discipline and felt that he was a good father even while acknowledging that she was aware father hit both Samantha and Matthew. Given mother's alliance with father and agreement as to his means of discipline, the juvenile court acted reasonably in treating the two homes as similarly detrimental to Samantha's well-being.

In its written order, the juvenile court also did not differentiate between the two homes, noting that it was necessary to remove Samantha from the "parents" and that "it would be detrimental to the safety, protection, or physical or emotional well-being . . . of the child to be returned to or placed in the home or the care, custody, and control of that or those parent(s) . . . ."

Even if, as mother argues, the juvenile court erred in relying on section 361, subdivision (d) instead of section 361.2, subdivision (a), mother has failed to demonstrate how such error has prejudiced her. We cannot reverse a judgment unless the error was prejudicial, meaning "'"'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'"'" (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303.) In light of the juvenile court's finding that it would be detrimental to Samantha if placed in mother's

14

custody, and that placing Samantha in mother's custody would subject her to the same harm as if placed in father's custody, we conclude that any error with respect to application of the wrong statute did not result in a miscarriage of justice. (*Id.* at pp. 303-304 [concluding the juvenile court's application of § 361 instead of § 361.2 to a noncustodial parent was harmless error].)

*In re V.F., supra*, 157 Cal.App.4th 962, 968, is distinguishable. In *V.F.*, an incarcerated father argued on appeal that the juvenile court erred when it removed the children from his custody under section 361, subdivision (c). He argued that because jurisdiction was based solely on the conduct of the children's mother, he should have been treated as a nonoffending parent and allowed to retain custody of the children under section 361, subdivision (c)(1). (*V.F.*, at pp. 967-968.) Significantly, there was no detriment finding in the record, although the *V.F.* court acknowledged that the record arguably would support a finding that placement with the father would be detrimental to the children. (*Id.* at p. 973.) The court declined to make an implied finding of detriment, instead holding that the juvenile court was required to make a finding of detriment "'in writing or on the record.'" (*Ibid.*) In contrast, the juvenile court in this case made both oral and written findings of detriment to the child if placed with mother. While the court never cited section 361.2, we need not speculate as to the juvenile court's position on whether placement with mother would be detrimental to Samantha. The court was clear that it would be. Thus, *V.F.* does not convince us that forfeiture is not warranted in this case.

Mother also cites *In re Adam H.* (2019) 43 Cal.App.5th 27, 32-33, as support for her position that the error in this case was not harmless. In *Adam H.*, like in *In re V.F.,* the appellate court

15

declined to imply a finding that placement with the child with father would be detrimental to the child where no such finding was made on the record. The court explained, "minor was doing very well under the care of father during unmonitored visits. In addition, there was evidence father was receptive to services and cooperative with the Department. The only concern cited at the disposition hearing was that Adam did not yet know father very well." (*Adam H.*, at p. 33.) Under those circumstances, the court declined to imply a finding of detriment. As set forth above, we need not make an implied finding in this case. The juvenile court stated both orally and in writing its finding that placement of Samantha with mother would be detrimental to the child.

Any error of the juvenile court in failing to specifically reference section 361.2 was harmless.

### DISPOSITION

The dispositional order denying mother custody is affirmed.

_____
CHAVEZ, J.

We concur:

_____
ASHMANN-GERST, Acting P. J.

_____
HOFFSTADT, J.

16