Filed 9/10/15  In re K. H. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K. H., A Person Coming Under the Juvenile Court Law. | B260430 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>K. B.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK02729) |

        APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

        Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

        Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Appellant K. B. (mother) appeals the juvenile court's order finding jurisdiction under Welfare and Institutions Code section 300, subdivision (b)(1)[1], and its dispositional order giving temporary physical custody of her now 10-year-old daughter K. H. to the Department of Children and Family Services (DCFS) for suitable placement.

When K. was two years old, mother placed K. in the care of K.'s great-grandmother, Joann B. While residing with Joann, K. was repeatedly raped and sodomized by Joann's adult son, Eugene, who also resided in the home. In response to DCFS's original petition, which included allegations concerning Joann's failure to protect K. from sexual abuse, the court removed K. from Joann's care and placed her in foster care. DCFS then filed a motion to terminate Joann's legal guardianship and a subsequent petition under section 342, seeking jurisdiction under section 300, subdivision (b)(1), due to mother's failure to protect K. from the sexual abuse. The court sustained the subsequent petition, finding the jurisdictional allegations true. The court denied mother's request to place K. in her home and again ordered suitable placement.

We affirm both the jurisdictional finding and the dispositional order on the subsequent petition. The court's jurisdictional finding is supported by substantial evidence. With respect to the dispositional order, the juvenile court erred by evaluating placement with mother under section 361, subdivision (c)(1), which governs removal from a custodial parent, rather than the applicable section 361.2, subdivision (a), which governs placement with a noncustodial parent after removal. However, as we explain, the error was harmless.

### FACTS AND PROCEDURAL BACKGROUND

When K. was two years old, mother K. B. could not provide stable housing or appropriate care for K. Mother left K. in the care of Joann B., K.'s great-grandmother. Mother was subsequently incarcerated on charges of transporting drugs. K.'s father,

---

[1] All further statutory references are to the Welfare and Institutions Code.

Christopher H., has never met K., has never provided for her care, and is currently serving a life sentence in state prison following a murder conviction.

K. lived with Joann, Joann's husband Eugene B., Sr. (Eugene Sr.), their developmentally disabled adult daughter, T., and their adult son, Eugene "Red" B., Jr. (Eugene). Joann became K.'s legal guardian in 2008. After mother completed her incarceration, she consistently visited K.

On December 15, 2013, DCFS received an anonymous referral alleging K. had been sexually abused. The reporter found K. bleeding from her anus and unable to have a bowel movement. K. apparently disclosed to another child that she had been having sex with "Red" since she was five years old.

The Los Angeles County Sheriff's Department immediately responded to the B. residence to investigate the report of sexual abuse. Deputy Hernandez interviewed K. privately. After some initial reluctance, K. disclosed that Eugene had been sexually abusing her since she was five years old. Approximately twice weekly, Eugene forced K. to remove her clothes and orally copulate him, licked and digitally penetrated her anus and her vagina, then raped and sodomized her. K. told Deputy Hernandez she disclosed the abuse to Joann on December 2, 2013, but Joann did not believe her and was upset with her about the allegations. Further, K. said that a few days after she disclosed the abuse to Joann, she left K. at home alone with Eugene, who chased her around the house with a knife and threatened to kill her because she disclosed his abuse. Sheriff's deputies took K. into protective custody and arrested Eugene.

DCFS social workers interviewed K., Joann, and Eugene Sr. Joann denied K.'s accusation of sexual abuse and reported K. to be "hyperactive," "defiant," "manipulative," and "a habitual liar." Eugene Sr. also denied the allegation, and said his son could not have had the opportunity to sexually abuse K. because Joann only left the house for a few minutes each day. He also called K. "a liar."

A DCFS social worker also interviewed mother. Mother said she was unaware of the abuse, and did not know "what to make of . . . [K]'s disclosure and cannot say if she believes the child or not due to the child's history of lying and being ADHD."

3

Mother stated she would like to have K. released to her, but did not have a stable living environment at that time. Mother was also caring for her second child, who was five years old at that time. DCFS placed K. in a foster home.

On December 18, 2013, DCFS filed a juvenile dependency petition seeking jurisdiction under section 300, subdivisions (b) and (d), alleging Joann knew or should have known of Eugene's ongoing sexual abuse and failed to protect K. from that abuse. At the hearing on that date, the juvenile court detained K. from Joann and ordered K. placed in foster care pending further investigation. The court ordered DCFS to set up a Christmas visit for K. and mother, approved monitored visitation for mother twice weekly for two hours each visit, and gave DCFS discretion to liberalize visitation with mother. Mother appeared at the detention hearing and, for a few weeks after the hearing, she visited K. once a week. However, in late January, 2014 mother stopped visiting K. Mother called K. sporadically over the next few months.

On March 20, 2014, the juvenile court held an adjudication hearing. The court sustained both counts of the petition and found jurisdiction under section 300, subdivisions (b) and (d). The court ordered K. should remain in foster care. Mother did not attend the hearing.

On May 7, 2014, DCFS filed a motion to terminate Joann's legal guardianship. Then, on June 24, 2014, DCFS filed a subsequent petition seeking jurisdiction under section 300, subdivision (b), due to mother's and father's failure to protect K. from sexual abuse. Count 1 of the petition alleged mother "made an inappropriate plan for the child's care and supervision, by leaving the child in the care of the child's maternal great grandmother, Joann B. resulting in the child being sexually abused since the child was five years old by the maternal great uncle, Eugene 'Red' B. who resided in the maternal great grandmother's home. The maternal great grandmother knew of the sexual abuse and failed to protect the child. Such failure to make an appropriate plan for the child's care and supervision on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm and damage." As to father, count 2 of the petition alleged he had been convicted of murder and was

4

currently serving a life sentence in state prison, which conviction "endangers the child's physical health and safety and place[d] the child at risk of physical harm, damage and danger." DCFS also indicated it "may seek an order pursuant to WIC 361.5 that no reunification services shall be provided the family which will result in immediate permanency planning through termination of parental rights and adoption, guardianship or long term foster care."

On June 12, 2014, mother left a telephone message for the DCFS case worker, advising she had given birth to her third child. Mother spoke by telephone with K. on June 13, 2014, but had no further contact with her after that date. The June 24, 2014 detention report indicated DCFS social workers had been unable to contact mother since January 2014, despite repeated telephone calls, contact with relatives, and an attempted home visit. DCFS intensified its efforts to locate mother in June, in advance of the detention hearing on the subsequent petition, to no avail.

On July 17, 2014, the court continued the detention hearing on the subsequent petition because DCFS had not been able to locate mother and provide notice of the hearing. The court ordered DCFS to continue its efforts to locate mother and scheduled a further hearing. Over the next six weeks, DCFS made numerous, but unsuccessful, attempts to contact mother by telephone and in person, and mailed written notice of the upcoming detention hearing to more than 20 past known addresses for mother.

On September 2, 2014, the juvenile court held a detention hearing on the subsequent petition. Mother appeared at the hearing. The court found DCFS established a prima facie case for jurisdiction under section 300, subdivision (b), detained K. from mother and father, and ordered that K. remain in foster care. The court ordered DCFS to provide family reunification services to mother, ordered monitored visitation for mother "minimum 2 times weekly 2 hours each visit," and gave DCFS discretion to liberalize visitation and release K. to mother. The court also ordered DCFS to interview mother and assess the possibility of placing K. with her. In addition, the court terminated Joann's legal guardianship on September 20, 2014.

According to the last minute information filed on October 28, 2014, a DCFS case worker met with mother on October 2, 2014. At that time, mother and her newborn son were staying with mother's aunt. Mother said she often stayed with her aunt, but also left from time to time to stay with other friends. Mother explained she had not been in contact with K. because she was looking for a job and was preoccupied with her newborn son. At that time, mother had been working at McDonald's for almost a month and said she would like to have her own apartment. She also said she would like K. to live with her. However, the case worker noted mother otherwise appeared uninterested in K., as she did not ask how K. was doing or when she could visit K. DCFS advised the court it would not release K. to mother until she began to visit K. regularly and at least once each week, participate in conjoint therapy with K., and keep in contact with DCFS as requested.

On October 28, 2014, the court held a jurisdictional and dispositional hearing on the subsequent petition. Although mother's counsel advised her of the jurisdictional hearing, and DCFS personally served mother with written notice of the hearing, mother did not attend. The court sustained the allegations of the subsequent petition and found jurisdiction under section 300, subdivision (b). Relying on section 361, subdivision (c)(1), the court ordered K. removed from mother's physical custody and renewed its order giving temporary physical custody to DCFS for suitable placement. The court also ordered DCFS to provide reunification services to mother. In addition, the court-ordered case plan required mother to participate in conjoint therapy with K. and to take a parenting class. The court ordered individual counseling for both mother and K.

Mother timely appealed.

### CONTENTIONS

Mother asserts the juvenile court's jurisdictional finding is not supported by substantial evidence. Mother also challenges the court's dispositional order denying her request to place K. in her home and placing K. in suitable care. She first contends the juvenile court erred by evaluating her placement request under section 361, subdivision

6

(c)(1), which governs removal from custodial parents and guardians, rather than section 361.2, subdivision (a), which governs placement with noncustodial parents following removal.  Mother further asserts the juvenile court's dispositional order is not supported by substantial evidence.

### *LEGAL DISCUSSION*

1.      *Standard of Review*

We review the juvenile court's jurisdictional finding and dispositional order for substantial evidence.  (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966.)  "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value."  (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.)  Although substantial evidence may consist of inferences, the inferences must be logical, reasonable and supported by evidence; the inferences cannot be the product of speculation or conjecture.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394.)  Conflicts in the evidence and reasonable inferences are resolved in favor of the prevailing party.  (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)  "[I]ssues of fact and credibility are questions for the trier of fact."  (*Ibid*.)  The juvenile court's determination will not be disturbed unless it exceeds the bounds of reason.  (*Ibid*.)

2.      *The Merits of Mother's Jurisdictional Challenge Should Be Addressed*

DCFS points out that mother challenges only one of the two jurisdictional findings made by the juvenile court.  As a result, the unchallenged finding as to father will continue to support dependency jurisdiction in this case.  (See *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 [as long as there is one unassailable jurisdictional finding, the juvenile court may still assert jurisdiction over a dependent child].)  Accordingly, DCFS urges us to reject without discussion mother's jurisdictional challenge.  We decline to do so.

We generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal; (2) could be prejudicial to the appellant or

7

could potentially impact the current or future dependency proceedings; or (3) could have other consequences for the appellant, beyond jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) Because the juvenile court's finding that mother failed to protect K. from sexual abuse may be used against mother in future dependency proceedings, we reach the merits of mother's jurisdictional challenge.

3. *Substantial Evidence Supports the Jurisdictional Finding*

Mother contends no substantial evidence supports the sustained allegation under section 300, subdivision (b), that she "made an inappropriate plan for the child's care and supervision, by leaving the child in the care of the child's maternal great grandmother, Joann B., resulting in the child being sexually abused since the child was five years old by the maternal great uncle, Eugene 'Red' B. who resided in the maternal great grandmother's home. The maternal great-grandmother knew of the sexual abuse and failed to protect the child. Such failure to make an appropriate plan for the child's care or supervision on the part of the mother endangers the child's physical health and safety and places the child at risk of physical harm and damage." Specifically, Mother argues her plan was not "inappropriate" because, at the time mother placed K. in Joann's care, Eugene was not known to be a sexual predator.

It may be that mother's plan to leave two year old K. with Joann was appropriate at the time it was made, particularly if, as it appears from the record, mother was then homeless, using drugs, drinking alcohol to excess, pregnant with her second child, and was involved in illegal drug-related activities. But even if we were to assume the plan was reasonably sound when made, it is evident from the record in this case that circumstances changed dramatically several years later, when Eugene's prolonged sexual abuse of K. began. Although mother appears to believe she had no ongoing obligation to ensure K.'s well-being, it was reasonable for the juvenile court to find mother's failure to maintain her relationship with K. and monitor Joann's care placed K. directly in harm's way.

Mother also argues DCFS was required, and failed, to establish K. would be at risk of future sexual abuse by Eugene if placed with mother. Mother's interpretation of

8

section 300 is incorrect.  Subdivision (b) provides for jurisdiction when "[t]he child *has suffered*, or there is a substantial risk that the child will suffer, *serious physical harm* or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . . "  (§ 300, subd. (b)(1), italics added.)  "[T]he use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish dependency jurisdiction . . . . "  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1435, fn. omitted; *In re Adam D.* (2010) 183 Cal.App.4th 1250, 1261.) Thus, jurisdiction may be exercised "either based on a prior incident of harm or a current or future risk." (*In re J.K., supra*, at p. 1435, fn. 5; *In re Adam D., supra*, at p. 1261.)  In light of the undisputed evidence Eugene repeatedly sexually abused K. when she was between the ages of five and eight years old, we find no error in the juvenile court's exercise of jurisdiction in this case.

4. *Substantial Evidence Supports the Dispositional Order*

Mother contends the juvenile court erred when it denied her request to place K. in her home under section 361, subdivision (c)(1), which governs removal of a minor from a custodial parent or guardian.  Mother argues the court should have evaluated her request for placement under section 361.2, subdivision (a), which governs a minor's placement with a noncustodial parent following removal.  We agree the court erred, but find the error harmless in this case.

The dependency statutory framework distinguishes between a parent with whom the child resided at the time DCFS initiated a dependency proceeding (custodial parent), and a parent with whom the child was not residing at the time the events or conditions arose that brought the child within the provisions of section 300 (noncustodial parent). (§§ 361, subd. (c), 361.2, subd. (a); see *In re V.F.* (2007) 157 Cal.App.4th 962, 969-970.)  Section 361, subdivision (c), governs the child's removal from the physical custody of a parent or legal guardian.  (See *In re V.F., supra*, at p. 969.)  By contrast, section 361.2 is not a removal statute. (See *In re Luke M*. (2003) 107 Cal.App.4th 1412, 1422.)  Rather, section 361.2 governs a child's temporary placement with a noncustodial parent and the provision of reunification services to the parents, and also

9

permits the court to grant legal and physical custody of the child to the noncustodial parent. (§ 361.2, subds. (a), (b); see *In re V.F.*, *supra*, at p. 1270.)

When the court orders the removal of a child from the custodial parent under section 361, subdivision (c), the court must determine whether there is noncustodial parent who desires to assume custody of the child. (§ 361.2, subd. (a).) "If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) Section 361.2, subdivision (c), requires the court to "make a finding either in writing or on the record of the basis for its determination under subdivision[] (a) . . . . " (§ 361.2, subd. (c); *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 299.)

Here, the court ordered K. placed in suitable care citing section 361, subdivision (c). This was error. As both mother and DCFS acknowledge, the provisions of section 361, subdivision (c), do not apply to mother's placement request because K. was not residing with her at the time DCFS initiated the original petition.

Although the juvenile court erred by failing to make a finding of detriment under section 361.2, subdivision (a), we will not disturb the court's dispositional order unless the error was prejudicial, i.e., it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (See *In re D'Anthony D., supra*, 230 Cal.App.4th at p. 303; Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].)

In assessing whether the erroneous application of section 361, subdivision (c), was prejudicial, we appropriately consider the similarity between the mandatory findings required by section 361, subdivision (c), and section 361.2, subdivision (a), as well as the evidence supporting the court's "substantial danger" finding concerning placement with mother. (See, e.g., *In re D'Anthony D., supra*, 230 Cal.App.4th at pp. 303-304 [applying section 361(c) "substantial danger" standard to deny father's

10

request for placement without considering detriment under section 361.2 was harmless error where the record contained substantial evidence to support a detriment finding].) Further, we note that both section 361, subdivision (c) and section 361.2, subdivision (a), require proof by clear and convincing evidence. (§ 361, subd. (c) [requiring proof by clear and convincing evidence]; *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1829 ["[T]o comport with the requirements of the due process clause, a finding of detriment pursuant to section 361.2, subdivision (a), must be made by clear and convincing evidence."].)

In denying mother's request to place K. with her, the court expressed deep concern that mother had made little, if any, effort to engage with K. during the dependency proceedings. The court's view is amply supported by the October 1, 2014 jurisdiction and disposition report and the October 28, 2014 last minute information. Immediately after K.'s initial detention, mother began visiting K. once a week, but the visits stopped after only one month. After that, mother had sporadic telephone contact with K., but even that occasional contact ceased in June 2014. When mother met with a DCFS social worker in October 2014, after being out of contact with DCFS since January 2014, mother was seemingly uninterested in K., as she asked no questions about K. and did not ask whether she might be able to visit K., who she had not seen in more than nine months. The court also interpreted mother's failure to appear at most of the dependency hearings, including the jurisdictional and dispositional hearing on October 28, 2014, as a lack of interest in K. Further, mother had been out of contact with DCFS, in part because her living situation was unstable, from late January until early October 2014. Finally, the court seemed to question mother's ability to care for K.'s physical and emotional needs, in light of the fact that she was already attempting to raise two small children in an unstable living situation and was, in her own words, "overwhelmed" and "pre-occupied with her newborn child."

In light of the court's assessment of mother's credibility, as well as her willingness and ability to care for K., it is not reasonably probable the court would have placed K. with mother had it applied section 361.2, subdivision (a). We conclude the

court would have found placement with mother detrimental to K.'s safety, protection or physical or emotional well-being, based upon the same substantial evidence it relied upon to conclude K. would be at substantial risk of harm under section 361, subdivision (c). Accordingly, the court's error was harmless.

## *DISPOSITION*

The jurisdictional and dispositional orders of the juvenile court are affirmed.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

JONES, J.[*]

WE CONCUR:

EDMON, P. J.                    ALDRICH, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.