Filed 8/21/20  In re K.S. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.S., a Person Coming Under the Juvenile Court Law. | B302069 (Los Angeles County Super. Ct. No. 19CCJP06266) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.S., Defendant and Appellant. | |

APPEAL from the jurisdictional and dispositional orders of the Superior Court of Los Angeles County, Rashida A. Adams, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case, it is undisputed that the juvenile court properly asserted jurisdiction over 6-year-old K.S., who lived with his maternal grandparents. Maternal grandfather sold methamphetamine; maternal grandmother used methamphetamine; and mother abused methamphetamine and did not have time to care for K.S. because she was either incarcerated or focusing on her own self-improvement.

Father argues that even though jurisdiction was proper, the juvenile court erred in sustaining allegations that he failed to protect K.S. from mother and maternal grandparents. Father's argument is unpersuasive because it is inconsistent with the juvenile court's credibility determinations. Father relies on his statements that he was unaware of mother's substance abuse and unaware that maternal grandparents sold and used controlled substances. The juvenile court, however, expressly found father's statements lacked credibility.

Father also challenges the juvenile court's dispositional order insofar as the court found that it would be detrimental to place K.S. in father's custody. Father again relies exclusively on evidence discredited by the juvenile court. Because father fails to demonstrate error, we affirm the juvenile court's jurisdictional and dispositional orders.

2

# BACKGROUND

Three days before the Los Angeles County Department of Children and Family Services (DCFS) filed the Welfare and Institutions Code[1] section 300 petition, mother, who was 24 years old, was released from incarceration. Three months earlier, maternal grandmother was released from incarceration. Maternal grandmother reported that mother violated her probation within the three-day release period.

## 1.    *Petition*

In September 2019, DCFS filed a section 300 petition. At the time, father lived in Nevada. DCFS alleged that mother has a history of substance abuse and currently abused marijuana and methamphetamine. DCFS alleged that father "failed to take action to protect the child when the father knew, or reasonably should have known of the mother's substance abuse and allowed the mother to have unlimited access to the child." DCFS further alleged that mother and father created a dangerous home environment for K.S. by allowing him to reside in the home of maternal grandparents. DCFS also alleged that mother has a history of mental and emotional problems rendering her incapable of caring for K.S. The juvenile court sustained the foregoing allegations.

DCFS alleged that father failed to protect K.S. from mother's emotional problems. The juvenile court did not sustain this allegation.

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

## 2. *Maternal grandparents*

Because mother frequently was incarcerated, K.S. lived with his maternal grandparents. Suspecting that maternal grandfather was selling drugs, the Los Angeles County Sheriff's Department executed a search warrant on February 2019 at the maternal grandparents' residence, where officers found one pound of methamphetamine, one gram of marijuana, and two .38 caliber rounds. K.S. could access the controlled substances and the ammunition. The officers arrested maternal grandfather on drug charges.

At that time, K.S. had been living at maternal grandparents' residence. Maternal grandfather reported he was K.S.'s primary caretaker.[2] Maternal grandfather admitted to selling and using methamphetamine. When a social worker entered the grandparents' home, K.S. was draped in a dirty blanket.

## 3. *Mother*

At the beginning of the dependency proceedings, mother reported she was enrolled in a substance abuse treatment program directed at treating marijuana and methamphetamine abuse. Mother denied knowing that maternal grandfather sold methamphetamine. Mother admitted she started using methamphetamine when she was 18 years old. Mother further reported she had been incarcerated for possession of a firearm. Mother also stated she has "PTSD, trauma, anxiety and depression." Mother stopped taking her medication for these

---

[2] When the officers asked K.S. where his father was, K.S. answered, "My daddy is my grandpa."

mental disorders two weeks prior to the filing of the dependency petition. In September 2019, mother tested positive for marijuana.

Mother left K.S. in maternal grandfather's care so that mother could "get [herself] situated first," describing that as her "main focus." (Boldface omitted.) Mother reported that father did not parent K.S. According to mother, father "was never around, he never made an effort to see him."

### 4. *Father*

Father admitted that he had been arrested for stealing a car.

On September 24, 2019, father contacted a social worker, stating he heard that DCFS detained K.S. Father reported that he had just returned to Nevada after spending two weeks in Los Angeles. Father stated he visited K.S. while he was in Los Angeles but did not see mother because her "whereabouts were unknown." Father claimed that he did not observe controlled substances or weapons in the home. On September 26, 2019, father did not show up for a drug test.

Father stated he did not know what mother "does with her life. From what I heard she just got out of jail and is in a program now." Father told the social worker he recently had learned that mother was incarcerated for a three-year period. When asked why he did not care for K.S., father answered that he cared for K.S. for a nine-month period when mother previously had been incarcerated. Father explained that he "ha[d] concerns" about K.S. in mother's care and that mother was "never around." Father believed mother was not around because she was a gang member and "[s]he is in the streets."

5

The next time father spoke to a social worker, he contradicted several of his earlier statements. According to father, mother "never used any drugs" in the three to four years they lived together. Father reported mother had no history of drug use. Father knew mother "smoke[d] weed" but "never suspected any abuse." Father stated, "I have been picking up my son twice or three times a month for the past 2-3 years and never suspected anything. Most of the time I went to pick him up she wasn't there and her dad would tell me she was out or that she was working. I didn't know she was in and out of jail." Father denied knowing mother was incarcerated and denied knowing paternal grandfather sold controlled substances. "If I knew [mother] was in and out of jail, trust me I would have had my son under my care. I am able and willing to take care of my son."

Father did not know if K.S. went to the doctor or if K.S. had any medical concerns. K.S. told a social worker that he wanted to live with father.

Father has two other children, who according to him "were taken away because their mom tested positive for meth when my baby was born. The baby was born positive at birth too. I had a case because they said, how I knew and didn't step in so I had to do parenting classes." Father reported that when the Nevada case closed, he had custody of his two children.

The following allegation was sustained against father in a Nevada court: Father neglected his two children "by failing to provide proper care, control, supervision, subsistence, education, shelter, medical care or other [care] necessary for their well-being, resulting in circumstances that indicated that their health and/or welfare was harmed or threatened with harm."

6

5.   *Following a hearing, the juvenile court assumed jurisdiction over K.S.*

No witness testified at the jurisdictional hearing.

As noted, the juvenile court sustained the allegations in the petition except it found no evidence father had knowledge of mother's emotional problems. On the other hand, the court found "the father's statements of complete lack of knowledge of the mother's substance abuse and what was going on in the child's home to be not credible. The father's statements are inconsistent. He indicated at one point that he has known the family for many years yet did not suspect anything at all. [¶] However, the evidence before the court indicates the maternal grandfather appears to have been an established drug dealer, the maternal grandmother an established methamphetamine user, that the mother has been using methamphetamine since age 18. And the parents had a relationship in which they were living together for a period of two to three years. [¶] The court finds it not credible that the father had no idea at all of any of the drug use and abuse that has been really permeating this child's life and caregivers."

The juvenile court also found that father first reported knowing that mother was incarcerated and later reported complete ignorance. The court concluded that father knew of mother's incarceration and "[d]espite that knowledge, the evidence before the court indicates that the father did nothing to investigate the maternal grandparents . . . ." "The father knew that the mother was not able to care for the child given her frequent absence. And, in fact, the father indicated . . . that the mother was in the streets and in a gang, yet he continued to

7

allow the child to be under the mother's custody and in an unsuitable environment with the maternal grandparents."

The juvenile court also referenced father's lack of knowledge of the circumstances of his other children. "So, again, the court finds it completely not credible that the father had no idea what was going on. The court finds that the father's statements evidence a pattern of failure to protect in the face of drug abuse and drug sales out of the home of the child."

6. ***Following a dispositional hearing, the juvenile court denied father's request for custody of K.S.***

No witness testified at the dispositional hearing. During argument, father's counsel requested that the court give custody of K.S. to father.[3] Counsel argued that father had custody of his other two children in Nevada.

The court found clear and convincing evidence that it would be detrimental to place K.S. with father. The court further found that father failed to protect K.S. "Despite the father completing the services, and satisfying the Nevada child welfare department regarding his other children, it appears that the father was unable to use the same skills learned in the protection of this child in that 6 or 7 months later the case is before this court as to this child under very similar circumstances."

The court ordered father to be drug tested if DCFS suspected him of drug use. The court ordered father to attend individual counseling to address the case issues and ordered him to attend a parenting class. The court permitted father unmonitored visits.

---

[3] K.S.'s counsel did not object to placement of K.S. outside of father's custody.

Father timely appealed from the juvenile court's jurisdictional and dispositional orders. As noted, father challenges jurisdiction only insofar as it concerns him. Additionally, father challenges the dispositional order only insofar as it deprives him of custody of K.S. Mother did not appeal.

## DISCUSSION

" '[W]e review both the jurisdictional and dispositional orders for substantial evidence. [Citation.] In doing so, we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders. Issues of fact and credibility are the province of the juvenile court and we neither reweigh the evidence nor exercise our independent judgment. [Citation.] But substantial evidence "is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] . . . 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" [Citation.]' " (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 560.)

The juvenile court's finding that it would be detrimental to place K.S. in father's custody must be based on clear and convincing evidence. (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 295.) Our Supreme Court recently explained: "[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by

9

this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

## A. Substantial Evidence Supported the Juvenile Court's Jurisdictional Findings that Father Failed to Protect K.S. From Mother and Maternal Grandparents

Father argues: "The juvenile court found true the allegations that Father knew of Mother's substance abuse and of the grandparents' using and selling drugs in their home. Substantial evidence did not support these findings."

Although arguably father's argument is not cognizable because jurisdiction is uncontested, we exercise our discretion to consider it. One parent's conduct—here mother's conduct—is sufficient to support dependency jurisdiction. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) We choose to consider father's jurisdictional challenge because absent substantial evidence to support jurisdiction, father would be a nonoffending parent, i.e., his conduct would not serve as a basis for dependency jurisdiction. (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613; *In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.) Additionally, the juvenile court's finding that it would be detrimental to place K.S. in father's custody was a direct consequence of the jurisdictional findings.

On the merits, father's argument is unpersuasive. Father ignores the juvenile court's extensive credibility findings. Father cites to his own statements that he was unaware that mother or grandmother used drugs or that grandfather sold drugs. The juvenile court found father's statements lacked credibility. This court does not reweigh the juvenile court's credibility findings. (*In re Joaquin C.*, *supra*, 15 Cal.App.5th at p. 560.) Finally, father emphasizes that he cooperated with DCFS and visited

K.S., but fails to show that his postpetition cooperation is relevant to whether he knew of mother's substance abuse or grandparents' use and sale of methamphetamine. Nor does he show that his postpetition conduct is relevant to whether he failed to protect K.S. from the risk posed by mother and maternal grandparents.

Once the juvenile court's credibility findings are considered, the evidence supports the conclusion that father had knowledge of mother's drug use and grandfather's drug dealing. The juvenile court found "it not credible that the father had no idea at all of any of the drug use and abuse that has been really permeating this child's life and caregivers." Additionally, father engaged in a pattern of failing to protect his children, requiring intervention of Nevada authorities to protect K.S.'s half-siblings whose mother abused controlled substances. Although father took a parenting class as part of the Nevada proceeding, he nevertheless failed to protect K.S. when K.S. needed his protection.

## B. Substantial Evidence Supported the Juvenile Court's Determination that It Would Be Detrimental to Place K.S. In Father's Custody

When a child is removed from a parent's custody and a noncustodial parent requests custody, the juvenile court must place the child with the noncustodial parent unless it finds by clear and convincing evidence that it would be detrimental to do so. (Section 361.2, subd. (a);[4] *In re Marquis D.* (1995)

---

[4] Section 361.2, subdivision (a) provides: "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the

11

38 Cal.App.4th 1813, 1821.) Section 361.2 applies regardless of whether the noncustodial parent is offending or nonoffending. (*In re D'Anthony D.*, *supra*, 230 Cal.App.4th at p. 295.) In contrast to the jurisdictional findings, which are made by a preponderance of the evidence, the juvenile court is required to assess detriment under a clear and convincing evidence standard. (*Ibid.*)

This court reviews the juvenile court's finding of detriment for substantial evidence. (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262.) We ask whether the record viewed in the light most favorable to the juvenile court's finding is sufficient for a reasonable trier of fact to find detriment by clear and convincing evidence. (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569–1570.)

Viewed through the lens of our standard of review, father demonstrates no error. Substantial evidence supported the juvenile court's finding that it would be detrimental to K.S. to place K.S. in father's custody. Father acted in a manner incompatible with parenthood because he failed to protect K.S. when K.S. needed his protection. Father left K.S. in the custody

---

child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child. The fact that the parent is enrolled in a certified substance abuse treatment facility that allows a dependent child to reside with their parent shall not be, for that reason alone, prima facie evidence that placement with that parent would be detrimental."

of mother, who jeopardized his safety through her substance abuse and who was often absent from K.S. because of her periods of incarceration. Despite knowing that mother was frequently incarcerated and knowing that mother was in a gang, father did not intervene to protect K.S. Father's contrary argument ignores the juvenile court's express findings.

Father relies heavily on *In re C.M.* (2014) 232 Cal.App.4th 1394, 1402 but mischaracterizes that case. *In re C.M.* identifies permissive factors for a juvenile court to consider when assessing detriment including the child's wishes, sibling bonds, and the child's relationship with the noncustodial parent. Father incorrectly alters the permissive language to mandatory language, arguing that K.S.'s wishes, his sibling bonds, and his relationship with father required placing K.S. in father's custody. Father's argument ignores the well-established principle that the preference for placement with a noncustodial parent applies only "when safe for the child." (*In re Patrick S.*, *supra*, 218 Cal.App.4th at p. 1262.) Here, the juvenile court properly focused on K.S.'s safety, and as explained above, the juvenile court's determination that it would be detrimental to place K.S. in father's custody was supported by the record.

In any event, in this case, the permissive *In re C.M.* factors do not support father's contention that the juvenile court should have placed K.S. in his custody. K.S. had a minimal relationship to father. Other than the nine-month period in which father cared for K.S., father visited K.S. sporadically when he visited Los Angeles. Father did not even know if K.S. visited the doctor. Mother reported that father had little to no interaction with K.S. There was no evidence K.S. met his half-siblings or shared a relationship with them. Father states that K.S. would be able to

13

"further develop" his sibling bonds but identifies no such sibling bonds.  Although K.S. stated that he wanted to live with father, the juvenile court was not required to place him with father when doing so would risk his safety.  (*In re Patrick S., supra*, 218 Cal.App.4th at p. 1265 ["a child's preference is not the deciding factor in a placement decision" under section 361.2, subd. (a)].)

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.

SINANIAN, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14