Filed 2/5/21  In re A.O. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.O., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CRYSTAL D.,<br><br>Defendant and Appellant. | F081051<br><br>(Super. Ct. No. JVDP-20-000042)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Stanislaus County.  Rubén A. Villalobos, Judge.

Siena Kautz, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Lindy GiacopuzziRotz, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

In this juvenile dependency case, the juvenile court found 12-year-old A.O.[1] came within its jurisdiction under Welfare and Institutions Code section 300[2] because of risk of harm due to conduct by both his parents and removed him from his parents' custody pursuant to section 361, subdivision (c). Crystal D. (mother), the noncustodial parent at the time of removal, appeals the juvenile court's jurisdictional and dispositional findings and orders. Mother contends the allegations of her conduct in the jurisdictional findings were not supported by sufficient evidence. She also contends the court erred by "removing" A.O. from her custody under section 361, subdivision (c) because she was a noncustodial parent, and the matter must be remanded for a hearing on whether A.O. should be placed with her pursuant to section 361.2, subdivision (a), the statute governing placement with noncustodial parents. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Petition and Detention*

In January 2020, the Stanislaus County Community Services Agency (agency) received a referral from a mandated reporting party that A.O. was "running around in the airport district in Modesto" without appropriate supervision and was living with a woman who had housing that did not legally allow anyone to reside with her. The emergency response social worker learned A.O. was not enrolled in school.

The agency had received referrals in October 2019 regarding A.O., which were "evaluated out." (Boldface & capitalization omitted.) In one of the referrals, a mandated reporting party reported that A.O.'s school was having trouble getting a hold of A.O.'s father. They observed cuts on A.O.'s arm, which appeared to be self-inflicted. The

---

[1] The reports list A.O.'s gender as female but indicate A.O. prefers "he/him" pronouns. Respecting A.O.'s preference, we refer to A.O. using the he/him pronouns throughout this opinion.

[2] All further undesignated statutory references are to the Welfare and Institutions Code.

mandated reporting party was also concerned A.O. was at risk of sexual abuse or trafficking because he had asked the school secretary about masturbation and semen. In another referral from October, a mandated reporting party reported they were concerned about possible commercial sexual exploitation of A.O. because A.O. had said things like he has to " 'go to work' " in a sexual way, had spoken about sexually inappropriate things not typical for children his age, and had been sexually inappropriate with other children at school.

The emergency response social worker contacted A.O.'s father, Edward O. (father), who informed her that he was living under a bridge, and he did not want A.O. to stay with him because it was unsafe and he had been having a rough time. Father reported A.O. had been expelled from school and had not attended since November 2019. Father advised father had been diagnosed with bipolar disorder but was not on medication. Father reported father had a lengthy history of drug use and had been using heroin and methamphetamine. Father completed a voluntary drug test and tested positive for amphetamines, methamphetamine, "MDMA," opiates, and fentanyl.

A records check on February 4, 2020, revealed that mother had 17 child welfare referrals from 2014 through 2019 from Sacramento County, Placer County, and Stanislaus County. The allegations included physical abuse, sexual abuse, and general neglect.

On February 5, 2020, the social worker spoke to A.O., who reported he had been staying with friends since Christmas and felt safe where he was staying. A.O. reported he did not feel safe with mother. A.O. denied being "touch[ed]" by anyone except by mother "a long time ago."

The woman with whom A.O. was staying reported being open to filing for guardianship, but it was later discovered she would not be able to because her housing would not allow A.O. to live with her. On February 20, 2020, father signed a protective custody waiver, and A.O. was placed in a foster home.

On February 24, 2020, the agency filed a petition under section 300 on behalf of A.O. alleging he came within the jurisdiction of the juvenile court under section 300, subdivisions (b)(1) (failure to protect), (c) (serious emotional abuse), and (d) (sexual abuse). The section 300, subdivision (b) allegations pertaining to mother included previous reports that (1) mother had sexually abused A.O. and A.O.'s sibling, J.B.; (2) mother had hit her children, used drugs, and engaged in domestic violence; and (3) mother had displayed sexualized behaviors around her children. The section 300, subdivision (c) allegations were that A.O. was suffering, or was at substantial risk of suffering, serious emotional damage as a result of mother's conduct and because A.O. had no parent or guardian capable of providing appropriate care, evidenced by A.O. displaying inappropriate sexualized behaviors at school and "hanging around" gang members. The section 300, subdivision (d) allegation was based on the previous reports that mother had sexually abused A.O. and his sibling, J.B.

The social worker contacted mother and notified her of the initial court date. Mother reported she would be there and would do anything for A.O. Mother asked the social worker why she could not have A.O. in her care, and the social worker responded it was because there were sexual abuse allegations that she molested A.O. and A.O.'s sibling. Mother reported the allegations were fabricated and that she would be present at the hearing.

At the detention hearing on February 25, 2020, A.O.'s care providers requested to speak to the social worker privately and shared with the social worker that when A.O. saw his father, he ran to him to give him a hug. When A.O. saw mother, mother approached him and hugged him, and said, " '[y]ou know I didn't do those things.' " A.O. appeared to do well when talking with father but appeared to get agitated when mother started talking about the past, which made A.O. feel uncomfortable. The care providers informed the social worker that A.O. had opened up and shared a lot with them

4.

about his past. They said A.O. had shared with them that he did not want to be left alone with mother.

At the detention hearing, the court appointed counsel for mother and father. A.O. said he would like to visit with both parents. The court ordered supervised visits between A.O. and mother and monitored visits between A.O. and father. The court ordered A.O. detained from the parents.

### *The Jurisdiction/Disposition Report and Attachments*

To support the jurisdictional allegations, the agency attached to its report multiple emergency response referrals, police reports, and delivered services logs, which we summarize below.

A May 2014 emergency response referral indicated the Sacramento County Child Protective Services department (Sacramento department) received a referral alleging physical abuse and general neglect. It was reported then 14-year-old J.B. had a "deep gash" on his forehead, which he reported to a school employee he had received from mother slamming his head against a wall. It was reported that after J.B. received the injury, mother did not seek medical attention for him and told him " '[y]ou did that to yourself.' " J.B. also had deep scratches on his back, left shoulder, and neck, which J.B. said happened when mother " 'clawed' him." J.B. further reported mother threw a "vacuum part" at him. J.B. stated mother hit then six-year-old A.O. on his back and bottom with a hairbrush and left a bruise on A.O.'s back. J.B. reported mother keeps "THC" and "some white substance" in a grey bag. The referral was "evaluate[d] out." (Capitalization omitted.)

A Sacramento County sheriff's deputy was dispatched to investigate the incident. The police report indicated mother reported to the deputy that J.B. had pushed her during an argument; the next day, he was acting up again and she punished him by making him stand in a corner. She explained she tried to grab his head to turn him around, and he pulled his head away and injured himself by hitting his head against the wall. J.B.

5.

admitted to the deputy he pushed mother but that he received his injury by mother pushing his head into the wall.  A.O. was six years old at the time and told the deputy he witnessed both incidents.  A.O. reported J.B. pushed mother and that mother was trying to pull J.B.'s head from the corner of the room when J.B. pulled away and hit himself on the corner, causing his injury.

In emergency response referrals from Sacramento department dated March 2015, and Placer County Family Children's Services dated September 2014, allegations of emotional abuse and neglect of A.O.'s other sibling, then 13-year-old A.B., was described as follows:  Mother had given temporary custody of A.B. to A.B.'s friend's parents.  The referrals alleged that A.B.'s guardians brought him to counseling, and he had since disclosed multiple incidents of abuse by mother.  A.B. reported to his guardians that mother would slap, punch, and speak to him in a derogatory manner.  The referrals alleged the probate court granted mother unsupervised visits with A.B., but A.B. was scared of visiting with his mother because of the past abuse.  The Sacramento department referral was "evaluate[d] out."  (Capitalization omitted.)  No action was taken on the Placer County referral as it was designated as a "secondary report."  (Capitalization omitted.)

An August 2015 emergency response referral indicated the Sacramento department received a referral from a mandated reporting party, who reported that during a normal counseling session, father and A.O.'s then stepmother (stepmother) stated that mother used to "severely emotionally [and] physically abuse" A.O. by pulling his hair, hitting him, and cussing at him.  The mandated reporting party was told the most recent abuse incident happened about a year prior, at which point A.O. started living with father and stepmother.  Other incidents were reported including father witnessing mother punching J.B. in the face until he bled; mother walking around the house in front of the children naked or in "a thong"; mother taking a bath with then 10- or 12-year-old A.B.; and mother having J.B. pass things to her while she was in the shower when he was 15

years old or younger. Father reported he caught J.B. trying to " 'bang' (sexually)" A.B. when he was naked. The mandated reporting party also reported that A.O. had said he did not feel safe around mother. Father and stepmother gave the mandated reporting party a video that J.B. made on his phone that depicted mother cussing and yelling at A.O., pulling A.O.'s hair, and A.O. looking frightened. The video was about a year old at the time. J.B. lived with his paternal grandmother, and A.O. resided with father and stepmother. The referral was "evaluate[d] out." (Capitalization omitted.)

An April 2016 police report indicated a Sacramento County Sheriff's deputy was dispatched to A.O.'s home due to sexual abuse allegations against mother. A.O.'s stepmother reported A.O. and J.B. had been molested by mother, but J.B. was not present to be interviewed by the deputy. A.O. spoke to the deputy and reported he was five or six years old when mother touched his vagina and anus once when he was in his bedroom naked.[3] A.O. said mother kept her hands on his bare skin for about 30 seconds but she could have been trying to clean him as it happened at a time when mother thought there was lice in the house. A.O. said mother may have had a baby wipe in her hand when she was touching him. A.O. reported mother had only slapped his shoulder once and has never hit him since. A.O. stated father had seen mother slap J.B. in the face.

An April 2016 cross-report by the Sacramento department contained more information provided by stepmother. Stepmother reported that A.O. left mother's home and began living with father in 2014. A.O. displayed sexual behaviors, and began counseling in 2015 to address them. In early April 2016, father had allowed A.O. to spend the weekend with mother, and when A.O. returned home, he acted " 'dead, lost' " with no emotions. A.O. began "having nightmares and fecal accidents." Stepmother told A.O. that if something happened to him, he should report it. A.O. then shared with stepmother that he was " 'inappropriately touched' " by mother on his " 'front' " and

---

**3**     See footnote 1, *ante*, page 2.

" 'bottom,' " referring to his "private parts." This abuse occurred when he lived with mother and father from 2012 through 2014. A.O. reported it would happen when father worked at night and he and mother shared the same bed. A.O. told stepmother the sexual abuse was not still occurring but he "began remembering" the abuse. Stepmother stated she and father called J.B. to ask if anything happened to him, and J.B. said mother " 'molested' " him from when he was five years old until 2014. Father reported that J.B. said mother had " 'strok[ed] and touch[ed] him' " and that she possibly had sexual intercourse and oral sex with him. J.B. then started crying and ended the phone call. Stepmother reported that father was filing for a restraining order and custody of A.O.

An agency delivered service log indicated that on April 16, 2016, the agency received a call from an employee at A.O.'s school, who reported A.O. disclosed to the school employee that when A.O. was five years old, mother touched A.O.'s vagina and buttocks area.

On April 20, 2016, A.O.'s counselor called the agency to report that A.O. and A.O.'s stepmother reported mother sexually abused A.O. in 2014 by putting a " 'squishy object' " in his " 'front and bottom' private areas." Stepmother clarified to the counselor this was his vagina and anus. A.O.'s counselor reported A.O. had been attending weekly therapy and had been diagnosed with "disruptive behavior disorder."

In May 2016, an investigating social worker with the agency spoke with then eight-year-old A.O. alone. The social worker asked A.O. if anything inappropriate happened and A.O. said no. The social worker asked again, and A.O. said that his stepmother wanted him to tell the social worker that mother touched him in a bad way in the "front" and "back" and "when [he] went potty." A.O. then said he felt mother put something in him; he told mother to stop, and she did. A.O. said it happened when he was five or six years old and nothing had happened since. The social worker observed that A.O. only said something had happened when stepmother was in "eye shot" of A.O.

Stepmother reported to the social worker that after A.O.'s last visit with mother, he started displaying sexual behaviors such as pinning down stepmother's son and trying to kiss him, laying in bed with stepmother and trying to touch her buttocks and breast area, and trying to touch father's buttocks. Father reported to the social worker that stepmother was the person who told him about the allegations and he just did not believe something like that happened. Father called mother to ask her about it and mother responded that "the child is into Mexican Haunting." Father said he did not understand what she meant.

On June 7, 2016, father spoke with an agency social worker and requested the agency's findings for his custody case. The social worker informed father he could not obtain the investigation report until after the referral was closed.

On June 20, 2016, the social worker contacted mother who began sobbing. Mother said the allegations were "an absolute lie." Mother denied ever being sexually inappropriate with A.O. and said she would never insert anything into A.O's private area. Mother said after her last visit with A.O., she was served with a restraining order that required her to go to family court to get visits and work out legal custody.

Following the telephone contact with mother, it was reported in the agency's delivered service logs "[t]here is discrepant information between the mother, father and child. It is unclear what had happened when the child was about 5 years old." The conclusion of the agency's investigation stated:

> "The allegation of sexual abuse is unfounded. The referral reported there are active concerns about the mother being sexually inappropriate with the child and states that it dates back to when the child was 5 years old. The child disclosed to law enforcement that [his] mother had touched [his] private areas when [he] was about age 4 or 5 but it was not in a sexual way. The mother had done that with a baby wipe as she was looking for signs of lice as the mother suspected there was lice infestation in the home and was washing all the clothes and sheets. When [social worker] spoke with the child[,] [he] states the mother attempted to put something near and in [his] private parts that was squishy but [he] was unable to identify what the

squishy thing was. The child said it happened when [he] was about 5 and nothing has ever happened again. Per speaking with the father, his girlfriend and the mother they are experiencing some issues with custody and each parent would like to have full custody of the child. At this time of this referral and investigation there are no concerns and or neglect as the child has been with the father since April and the mother has not had contact or visits. It is for the best that the mother and father deal with their custody issues at family court. The situation at this time is stabilized."

The agency's jurisdiction/disposition report filed on March 27, 2020, stated the restraining order protecting A.O. from mother was issued in October 2016 and expired in October 2019.

In March 2020, the social worker spoke with mother. Mother denied the sexual abuse allegations; she stated the reports were fabricated by father and stepmother and she would never abuse her children. The social worker mentioned to mother that A.O. stated mother was looking for lice in the vaginal area, and mother responded by asking why she would have done that since A.O. did not have pubic hair at that time. Mother had started parenting classes and individual counseling but refused to engage in sex offender counseling. The social worker explained to mother that she could complete an assessment and would not have to admit to the allegations. Mother was still hesitant but said she would speak with her attorney. Mother expressed a desire to participate in family counseling with A.O. because A.O. thought mother left him, but mother could not see him due to the restraining order.

When asked to provide a statement for the jurisdiction/disposition report, A.O. stated, "I would like to live with my dad if he can get his stuff together and find stable housing. If I live with my dad, I would like to have regular visits with my mother. If my father cannot get his stuff together, I would like to go live with my mom but I would also like to have regular visitation with my dad."

Visits between mother and A.O. in March 2020 went well. Mother was appropriate, and she and A.O. appeared happy.

Under "consideration of placement with non-custodial parent" (boldface & capitalization omitted) the report indicated it would be detrimental to the health and well-being of A.O. to be placed with mother due to the past sexual and physical abuse allegations and because there was still an active restraining order protecting A.O. from mother.

In the assessment/evaluation of the jurisdiction/disposition report, the social worker stated that although mother denied sexually abusing A.O., the agency was concerned as the matter was reported to law enforcement and a restraining order was granted. The social worker indicated mother had declined to participate in a sex offender assessment despite the social worker's recommendation to do so and advisement mother would not have to admit to the allegations. The social worker stated that A.O. reported he wanted to have a relationship with mother and enjoyed their visits. The social worker recommended that family reunification services be granted to mother.

### Combined Jurisdiction/Disposition Hearing

At the combined jurisdictional/dispositional hearing held on April 2, 2020, the agency did not submit additional evidence besides its reports, and neither mother nor father cross-examined the social worker nor presented evidence. Mother's counsel argued the agency had not met their burden of proving the allegations against mother by a preponderance of the evidence. Mother's counsel stated the only evidence in the report of sexual misconduct was the police report from 2016. Mother's counsel argued "we're dealing with a four-year-old police report dealing with an eight-year-old allegation. And there's no additional evidence to support this." Mother's counsel explained criminal charges were not pursued after the police report, and requested that the sexual allegations against mother be dismissed. Mother's counsel made no argument regarding the other allegations or as to disposition.

Counsel for the agency disputed mother's counsel's statement that the police report was the only evidence supporting the allegations against mother. Counsel argued

11.

there was an active restraining order in place as well as consistent statements of the abuse documented in the agency's referral notes by both A.O. and his sibling.

Mother's counsel responded by saying, "Although we don't refute [the restraining order] exists, it's not before the Court and why it was issued is also not before the Court. So I think it's too speculative to say that that was due to the sexual assault allegations when it's not before the Court . . . ."

A.O.'s counsel submitted on the report and noted that A.O. loves mother and wants her to receive services.

The court found the allegations were true by a preponderance of the evidence that A.O. was described by section 300, subdivisions (b)(1), (c), and (d). The court found pursuant to section 361, subdivision (c): (1) there is or would be a substantial danger to the physical health, safety, protection or physical or emotional well-being of A.O. if he were to be returned home, and there were no reasonable means by which A.O. could be protected without removing A.O. from the parents' physical custody; and (2) that A.O., or a sibling of A.O., had been sexually abused or is deemed to be at substantial risk of being sexually abused by a parent and there were no reasonable means by which A.O. could be protected from further sexual abuse or a substantial risk of sexual abuse without removal. The court ordered both parents to receive reunification services. The court specifically noted it considered the agency's jurisdiction/ disposition report, argument of counsel, and all attachments to the report, including log notes and police reports, in making its findings.

## DISCUSSION

### I.     Jurisdiction

#### A.     *Discretion to Review*

Mother contends the jurisdictional findings that pertained to her were not supported by substantial evidence but does not challenge the findings regarding father. Mother acknowledges " 'jurisdictional finding[s] good against one parent is good against

12.

both' " (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161), and that generally, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492). She requests, however, that we exercise discretion to review the findings as they pertain to her because a finding in a dependency hearing that a parent committed an act of sexual abuse creates a presumption of substantial risk of abuse or neglect in future proceedings under section 355.1, subdivision (d) and because the distinction between being found an " 'offending' " parent versus a " 'non-offending' " parent may have "far-reaching implications with respect to future dependency proceedings . . . and . . . parental rights." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)

We will address mother's claims for the impact the jurisdictional findings may have on future dependency proceedings. (See *In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.)

### B.    Standard of Review

We review a juvenile court's jurisdictional order for substantial evidence. (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) The appellate court does not reweigh the evidence or exercise independent judgment, but merely determines if there are sufficient facts to support the findings of the trial court. We must review the whole record in the light most favorable to the judgment below to determine

13.

whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate.  (*Ibid*.)

### C.    *Section 300, Subdivision (d)*

We first turn to the juvenile court's finding that A.O. came within its jurisdiction under section 300, subdivision (d).  We conclude the finding is supported by substantial evidence.

A child may be adjudged a dependent of the court under section 300, subdivision (d), as pertinent here, if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code,[4] by his or her parent or guardian or a member of his or her household." (*Ibid*.)

A child's disclosures of sexual abuse is sufficient to support a jurisdictional finding under section 300, subdivision (d), despite inconsistencies.  (*In re D.C.* (2015) 243 Cal.App.4th 41, 52, superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.)

Here, the allegations under section 300, subdivision (d) were:

"d-1    There are previous reports reporting that [mother] sexually abused the minor and the minor's siblings.

---

**4**    Penal Code section 11165.1 defines " 'sexual abuse' " as "sexual assault" as defined by the criminal offenses of rape, statutory rape, rape in concert, incest, sodomy, oral copulation, lewd or lascivious acts upon a child, sexual penetration, or child molestation.  (*Id*., subd. (a).)  " '[S]exual assault' " includes but is not limited to:  (1) penile penetration of the vagina; (2) oral sex; (3) penetration of the genitals or anal opening, including by use of object, excluding acts performed for a valid medical purpose; (4) intentional touching of the genitals or intimate parts for the purposes of sexual arousal or gratification, excluding acts reasonably construed as normal caretaker responsibilities, interactions with or demonstrations of affection for the child, or acts performed for a valid medical purpose; and (5) masturbation in the presence of the child. (*Id*., subd. (b).)

"a)    On a report dated April 17, 2016, it was reported that [A.O.] reported to counselor that [A.O.] was inappropriately touched by . . . mother. That . . . mother touched the front and bottom, words used to describe genitalia. The abuse occurred when . . . mother and father resided together from 2012 to 2014 and [A.O.] slept in the bed with mother while . . . father worked at night. It was reported that . . . mother penetrated [A.O.], and [A.O.] did not know what . . . mother used to touch, but felt the bare hand on [A.O.'s] bare skin. . . . [F]ather then contacted the older child, [J.B.], and it was reported that . . . mother molested [J.B.] from the age of 5 years old until 2014. [J.B.] reported that . . . mother would stroke and touch him and possible intercourse and oral sex; however [J.B.] began to cry and got off the phone. It has been reported that an 8 year protective order was issued by the Superior Court of Sacramento for [A.O.] from . . . mother.

"b)    On a referral dated, August 4, 2015 it was reported that . . . mother would walk around in a thong in front of the children and would have her sons pass her things while she was taking a shower and she was once caught taking a bath with the child [A.B.]."

Here, the juvenile court expressly relied on information contained in the reports and delivered service logs attached to the jurisdiction/disposition report. As respondent points out, an agency's report "and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction . . . may be based." (§ 355, subd. (b).) If a party timely objects to the hearsay evidence, "the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based," unless the agency can show an exception applies. (*Id*., subd. (c).) A party to a jurisdictional hearing may also subpoena witnesses whose statements are contained in the agency's report or introduce admissible evidence relevant to the weight of the hearsay evidence or credibility of the hearsay declarant. (*Id*., subd. (d).)

Here, mother did not object to any hearsay statements in the reports, did not seek to cross-examine the social worker, and did not introduce any of her own evidence. The

juvenile court could properly rely on the information contained in the reports and attachments that mother had inserted an item into A.O.'s vagina and/or anus, which A.O. reported to his stepmother, his counselor, and an agency social worker; had " 'strok[ed] and touch[ed]' " in a sexual way and possibly had sexual intercourse with A.O.'s sibling, J.B.; and had exhibited sexualized behavior in the presence of and toward the children. The reports also documented A.O. having depressive and sexualized behavior after remembering being touched by mother. A.O.'s sexualized behavior continued into October 2019, raising the concern of a mandated reporter at A.O.'s school.

In addition, a restraining order was issued protecting A.O. from mother by the Sacramento County Superior Court. Though mother calls the restraining order "hypothetical" and argues there is no evidence the restraining order was issued due to the sexual abuse allegations, we find the record contains evidence from which the court could have reasonably inferred the restraining order was related to the sexual abuse allegations. Stepmother reported father had filed for the restraining order after the sexual abuse allegations came to light, and mother confirmed she was served with the paperwork shortly after the visit during which A.O. said he remembered the touching had occurred.

Finally, at the beginning of the dependency proceedings, A.O. mentioned he had been touched by mother "a long time ago." He also reported to the social worker he did not feel safe with mother and told his care providers he did not want to be left alone with mother. Though A.O. also expressed wanting to visit mother and rebuilding a relationship with her, we do not find this desire to be mutually exclusive from his other comments or that his other comments, which are concerning, should be disregarded. This evidence taken in the aggregate supported the court's finding by a preponderance that A.O. and his sibling, J.B., were sexually abused by mother or that A.O. was at substantial risk of being sexually abused by mother.

The evidence also supported the court's finding that the risk existed at the time of the hearing. "Although 'the question under section 300 is whether circumstances *at the*

*time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) "A parent's past conduct is a good predictor of future behavior. [Citation.] 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' " (*Ibid.*)

We acknowledge the age of the allegations and conclude the court could have reasonably found by a preponderance of the evidence A.O. was at a substantial risk of abuse at the time of the hearing. Though the allegations were from years earlier, there was no evidence that supported the risk did not still exist. Rather, evidence supported the opposite inference; mother was legally barred from seeing A.O. because of the restraining order, which we have explained the court could have reasonably concluded was issued due to the sexual abuse allegations. Further, at the time of the hearing, mother had resisted taking a sex offender assessment even after being advised she would not need to admit to the allegations. Finally, in evaluating "substantial risk" of harm we look not only to the probability of the harm but the magnitude of harm. (*In re I.J.*, *supra*, 56 Cal.4th at p. 778 [" 'Some risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great. . . . [¶] . . . [¶] . . . Conversely, a relatively high probability that a very minor harm will occur probably does not involve a "substantial" risk. Thus, in order to determine whether a risk is substantial, the court must consider both the likelihood that harm will occur and the magnitude of potential harm . . . .' "].) Because the magnitude of sexual abuse is so great, and because there were past allegations with no interim contact with A.O. or engagement with services in the intervening years, we conclude there is substantial evidence of a substantial risk of abuse at the time of the hearing.

When viewed in the aggregate, there was enough evidence for the juvenile court to reasonably conclude by a preponderance of the evidence that A.O. was at substantial risk of being sexually abused by mother at the time of the hearing.

We are not persuaded by mother's arguments otherwise. While we appreciate mother's point that the substantial evidence standard is not "toothless" (citing *In re I.C.* (2018) 4 Cal.5th 869, 892), we view mother's arguments as requests that we reweigh the evidence.

First, mother points out no criminal charges resulted from law enforcement's investigation of the allegations, and the initial referral of sexual abuse was deemed to be unfounded by the agency. The absence of criminal charges did not preclude the juvenile court from finding A.O. was at substantial risk of sexual abuse, as criminal proceedings are not a requirement for a sustained section 300, subdivision (d) allegation. Nor was the juvenile court required to accept mother's interpretation that the reason the referral was deemed "unfounded" by the agency was because "the social worker found the allegations to be coached and unreliable." This was not the express reason given for the agency's determination; rather, the conclusion stated: "At this time of this referral and investigation there are no concerns for abuse and or neglect *as the child has been with the father since April and the mother has not had contact or visits.* It is for the best that the mother and father deal with their custody issues at family court. *The situation at this time is stabilized.*" (Italics added.) The court could have reasonably concluded a primary reason the agency determined the referral was unfounded was because A.O. was not living with mother, father was seeking custody and not allowing A.O. to see mother, and, therefore, there was no need for the agency to intervene.

Mother also contends the sexual abuse allegations were orchestrated by stepmother in order to ensure a more favorable custody order for father. In support, mother points out that A.O. described the touching as hygienic when interviewed alone and only said the touching was sexual when he was either with or within sight of

stepmother. We note that though A.O. told the deputy he thought the touching could have occurred in the context of mother checking him for lice, when mother was presented with this statement, she denied the touching occurred at all, asking why she would have checked A.O. for lice if he did not have pubic hair. Mother's denial the touching occurred undermines A.O.'s estimation the touching may have been hygienic and gives rise to the inference that the touching he reported was instead for sexual purposes. We also note the court was not required to make the same inferences mother has made regarding any inconsistencies in A.O.'s statements or the effect of A.O.'s stepmother on him. While mother contends the evidence raises the inference stepmother pressured A.O. into making false statements, the court could have reasonably made another inference: that A.O. was more comfortable making more detailed statements to stepmother or when stepmother was present. While evidence may support mother's inferences, we look only to whether the evidence reasonably supports any inferences the court made. We conclude it does. As mother made no objections to the information contained in the reports, the court was permitted not only to rely on the statements contained within them, including hearsay statements, but to determine the weight of them. As we have explained, the totality of the evidence contained in the reports constituted substantial evidence supporting the court's findings.

For the reasons stated, we find the court made no error by sustaining the section 300, subdivision (d) allegations.

Because we find substantial evidence supports the court's section 300, subdivision (d) finding, we decline to review mother's claims regarding the findings under section 300, subdivisions (b)(1) and (c), as reversal of either of these findings would not have any practical effect on this or future dependency proceedings. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over

19.

the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence."].)

## II.    Disposition

Mother argues the court erred by failing to consider placement with her as a noncustodial parent under section 361.2, and instead "removing" the children from her under section 361, subdivision (c).  Respondent concedes the court erred by referring to the wrong statute but argues any error was harmless.  We agree with respondent.

Section 361, subdivision (c) provides, in pertinent part:  "A dependent child shall not be taken from the physical custody of [the] parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence," that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

Section 361.2, subdivision (a) provides that if a "parent . . . with whom the child was not residing at the time that the events or conditions arose that brought the child within" the court's jurisdiction requests custody, "the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."  To comport with due process requirements, the party opposing placement has the burden to show by clear and convincing evidence the child will be harmed if the noncustodial parent is given custody. (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1084.)

As it is clear from the plain language of the statutes that section 361, subdivision (c) relates to custodial parents and section 361.2 relates to noncustodial

parents, and it is undisputed mother was a noncustodial parent at the time the proceedings were initiated, we conclude the court erred by referring to section 361, subdivision (c).

The issue before us, therefore, is whether the error was harmless. In similar cases, because the findings required under each statute are substantively similar, and both sets of findings require proof by clear and convincing evidence, reversal is generally not required when the juvenile court's findings under section 361, subdivision (c) are supported by substantial evidence. (See *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303-304; accord, *In re Andrew S.* (2016) 2 Cal.App.5th 536, 545, fn. 5; cf. *In re Abram L.* (2013) 219 Cal.App.4th 452, 460-464 [finding miscarriage of justice where court made § 361 finding as to custodial mother, but not noncustodial father, and "[n]othing in the record" indicated the court considered the requirements of § 361.2].) Mother argues both that the dispositional findings were not supported by substantial evidence and that the court prejudicially erred by failing to "state the facts on which the decision to remove the minor is based" (§ 361, subd. (e)). We disagree with mother's contentions.

We conclude the juvenile court's findings were supported by substantial evidence, bearing in mind the clear and convincing standard (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012), and that mother would not have obtained a more favorable result had the juvenile court applied the section 361.2 detriment standard at the dispositional hearing. (See *In re D.P.* (2020) 44 Cal.App.5th 1058, 1068; *In re D'Anthony*, *supra*, 230 Cal.App.4th at p. 303.) We also conclude that any failure to state facts on the record was also harmless because, based on the evidence, we do not find it is reasonably probable a result more favorable to mother would have been reached had the court done so. (*In re D.P.*, at p. 1068.)

Here, the evidence of the prior referrals due to mother's past behavior, including not only the sexual abuse, which we have discussed at length, but physical abuse toward all her children, the existence of a court-issued restraining order protecting A.O. from mother, and A.O.'s reports that he did not feel safe with mother and did not want to be

21.

left alone with her, all support the juvenile court's finding that A.O. was at substantial danger if placed with mother. The danger existed at the time of the hearing and no reasonable means existed to protect A.O. because of mother's resistance to the recommended sex offender services.

Since there is substantial evidence to support the juvenile court's "substantial danger" finding, we infer the juvenile court would have relied on the same evidence to make a detriment finding against mother. Thus, it is not reasonably probable the juvenile court would have made a different finding had it expressly considered whether the placement would be detrimental to A.O.'s safety or physical well-being under section 361.2. We also conclude it is not reasonably probable the court would have come to a different conclusion had it put facts supporting its decision on the record, based on the evidence as well as the fact that mother made no objections to, or argument against, the agency's dispositional recommendation, which the court followed. In the absence of contest or argument on the issue of disposition, we presume the court simply made its finding based on the evidence that supported it, as we have discussed.

Accordingly, any error was harmless and reversal is not required.

## <u>DISPOSITION</u>

The court's jurisdictional and dispositional findings and orders are affirmed.


DE SANTOS, J.

WE CONCUR:



SMITH, Acting P.J.



MEEHAN, J.

22.